# Guenthoer's Estate.

*Decedents' estates — Widow's $5,000 preference — Statutes — Amendment of statutes—Constitutional law—Acts of April 8, 1833, P. L. 315; April 11, 1848, P. L. 536; April 20, 1869, P. L. 77, and April 1, 1909, P. L. 87.*

1. The Act of April 1, 1909, P. L. 87, creating the widow's $5,000 preference, applies not only to estates of intestates, but also to the estate of testates where the widow elects to take against the will.

2. The Act of April 1, 1909, P. L. 87, entitled "An Act to amend Section 1 of an Act entitled 'An Act relating to the descent and distribution of the estates of intestates,' passed and approved April 8, 1833, defining and declaring the interest that shall descend to and vest in the surviving husband or wife of such intestate," does not violate Article III, Sec. 6, of the Constitution, which provides that "no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." The act refers to the general law in force at the time of its passage, and not to any special or particular statutes; therefore the constitutional requirement as to re-enactment and publication has no application.

3. Where the reference in an adopting statute is to the law generally which governs the particular subject and not to any specific act or part thereof designated in the adopting act, the reference means the law at the time the exigency arises as to which the law is to be applied; and there is no distinction between acts relating or referring to procedure, and acts affecting substantive rights.

4. The Act of April 1, 1909, P. L. 87, giving the widow a preference of $5,000 does not violate the constitution as being inadequate in title, although the act is construed as being applicable to the estate of testates where the widow elects to take against the will, inasmuch as the act deals with the $5,000 as a part of an intestate's estate, and not as a part of a testate's estate.

5. That portion of a testator's estate which the widow elects to take against her husband's will comes to her by virtue of the statute, not as the estate of a testate, and as such devised or bequeathed to her, but as an estate of an intestate.

Argued, Jan. 4, 1912. Appeal, No. 184, Jan. T., 1911, by Jacob Guenthoer, from decree of O. C. Phila. Co., Jan. T., 1910, No. 16, dismissing exceptions to adjudication in Estate of Joseph Guenthoer deceased. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing exceptions to adjudication.

*Alex. Simpson, Jr.,* for appellant.—It is a general rule of statutory construction that if an act adopt the provisions of a preceding act, which are not merely procedural, an amendment or repeal of the latter will not extend, limit or repeal the former: Kendall v. U. S., 37 U. S. 524.

In re Heath, 144 U. S. 92 (12 Sup. Ct. Repr. 615); Shull v. Barton, 56 Nebraska 716 (77 N. W. Repr. 132); Darmstaetter v. Moloney, 45 Mich. 621 (8 N. W. Repr. 574); University of Michigan Regents v. Auditor General, 109 Mich. 134 (66 N. W. Repr. 956); Schlaudecker v. Marshall, 72 Pa. 200.

A statute will be so construed as to interfere as little as possible with a person's right to do as he pleases with his own: Cauffman v. Long, 82 Pa. 72; McGlade's App., 99 Pa. 338.

It is a presumption of law that the legislature does not intend to alter the preexisting law beyond the immediate scope of an amending statute: Foster v. Com., 8 W. & S. 77; Esterley's App., 54 Pa. 192; Colorado Milling & Elevator Co. v. Mitchell, 26 Colo. 284 (58 Pac. Repr. 28).

Such a construction should be given to a statute as will harmonize with the spirit as well as the letter of constitutional provisions: Wilkes-Barre v. Meyers, 113

Pa. 395; Provident Life & Trust Co. v. Hammond, 230
Pa. 407; Searight's Estate, 163 Pa. 210.

*John Monaghan,* with him *David Phillips,* for appellee.—The widow is entitled to the share given her by
the act of 1909, where she elects to take against the
will of her deceased husband, there being no issue: Gilbert's Estate, 227 Pa. 648; Lingo's Estate, 20 Pa. D. R.
34; Whilt's Estate, 19 Pa. D. R. 550; Guenthoer's Estate, 20 Pa. D. R. 704; Williams's Estate, 20 Pa. D. R.
816; Blackburn's Estate, 38 Pa. C. C. R. 379.

The appellee having declined to accept under the
will, the intestate laws supersede the will as to her: As
to her there is no will and her rights are to be determined as if none had ever been written: Murray's Estate, 28 Pa. Superior Ct. 474; Hoover v. Landis, 76 Pa.
354; Cunningham's Estate, 137 Pa. 621.

The operation of the Act of April 11, 1848 (P. L.
536), is not limited to the intestate laws in existence at
the time of its passage: Vernon Park, 163 Pa. 70;
State v. Hays, 78 Mo. 600; U. S. v. Barton, 24 Fed.
Cases 1025 Case No. 14,534; Culver v. People, 161 Ill.
89 (43 N. E. Repr. 812); Newman v. Yakima, 7 Wash.
220 (34 Pac. Repr. 921); Jones v. Dexter, 8 Fla. 276;
Harris v. White, 81 N. Y. 532.

The Act of 1909 must be regarded as if at this time
it were written into the body of the Act of April 8, 1833.
The Act of 1909 speaks as of 1833 as to deaths of husbands occurring after the passage of the Act of 1909,
and, therefore, the Acts of 1848 and 1869, giving to the
widow taking against the will the same share as if her
husband had died intestate, should be construed so as
to allow the widow the additional five thousand dollars
under the Act of 1909.

Opinion by Mr. Justice Mestrezat, February 19,
1912:

Joseph Guenthoer died on December 18, 1909, leav-

ing a widow and collateral heirs but no issue. He executed a will dated September 5, 1907, which was duly probated, and by which he gave his entire estate to his brother, Jacob Guenthoer, and appointed his brother Otto Guenthoer, executor, to whom letters testamentary were granted December 27, 1909.

The executor filed his account by which it appeared that the balance in his hands for distribution was $4,497.37. The widow presented a petition to the orphans' court averring inter alia that she had elected to take against her husband's will; that under the act of April 1, 1909, P. L. 87, she was entitled to real or personal estate or both to the aggregate value of $5,000 in addition to her widow's exemption, and in addition thereto, to one-half of the remaining real estate for life and of the remaining personal estate absolutely; that the decedent was not seised of any real estate at the time of his death; that under the provisions of said act the petitioner had selected the articles and cash set forth in the annexed inventory and appraisement; and prayed the court to approve the inventory and appraisement, and to decree that said articles and cash be set apart for her use and benefit. The court directed the petition to be filed. Subsequently at the audit of the executor's account, the auditing judge held that the widow was entitled, under the act of 1909, to the sum of $5,000 out of the decedent's estate, and awarded the balance in the hands of the accountant, which was less than $5,000, to the widow as prayed for in her petition. Exceptions were filed to the adjudication by Jacob Guenthoer, the legatee, which were dismissed by the court in banc, and a decree was entered confirming the adjudication. From that decree Jacob Guenthoer has taken this appeal.

The appellant contends that the act of 1909 applies to the estates of intestates, and not to the estate of testates where the widow elects to take against the will, and that if applied to the latter it would be unconsti-

tutional as it does not refer to such estates either in its title or body, and would violate article 3, section 6, of the constitution which provides that "no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length." It is, therefore, claimed that as Joseph Guenthoer died testate, disposing of his estate by will, the act of 1909 has no application, and that the widow, although taking against the will, is not entitled to five thousand dollars out of the decedent's estate.

In disposing of the question raised by this appeal it will be necessary to refer to and consider the prior legislation affecting the estates of decedents. The act of April 8, 1833, P. L. 315, 2 Purd. 1994, is entitled "An act relating to the descent and distribution of the estates of intestates." That act directs how the real and personal estate of an intestate decedent shall be divided, after the payment of his debts and which had not been sold or disposed of by will. Where he leaves a widow and issue, the widow is entitled to one-third part of the real estate for life and to one-third part of the personal estate absolutely. Where he left a widow and collateral heirs but no issue she was entitled to one-half part of the real estate for life, and to one-half part of the personal estate absolutely. Section 11 of the act of April 8, 1833, P. L. 249, 1 Purd. 1275, relating to last wills and testaments, provides that "a devise or bequest by a husband to his wife of any portion of his estate or property, shall be deemed and taken to be in lieu and bar of her dower in the estate of such testator, * * * provided, that nothing herein contained shall deprive the widow of her choice either of dower, or of the estate or property so devised or bequeathed." The 11th section of the act of April 11, 1848, P. L. 536, 1 Purd. 1276, provides that the 11th section of the act of April 8, 1833, just referred to, "shall not be con-

strued to deprive the widow of the testator, in case she elects not to take under the last will and testament of her husband, of her share of the personal estate of her husband under the intestate laws of this commonwealth; but that the said widow may take her choice, either of the bequest or devise made to her under any last will or testament, or of her share of the personal estate under the intestate laws aforesaid." Subsequently the act of April 20, 1869, P. L. 77, 1 Purd. 1278, was passed, section one of which provides that where the decedent shall leave a will and the widow elects not to take thereunder, "she shall be entitled to such interest in the real estate of her deceased husband as the widows of decedents dying intestate are entitled to under the existing laws of this commonwealth."

Such was the statutory law of the state regulating the estates of decedents when the act of April 1, 1909, P. L. 87, 5 Purd. 5621 was passed under which the widow of Joseph Guenthoer, deceased, claimed five thousand dollars out of his estate. The act is entitled "An act to amend section one of an act entitled 'an act relating to the descent and distribution of the estates of intestates,' passed and approved April 8, 1833, defining and declaring the interest that shall descend to and vest in the surviving husband or wife of such intestate." The act disposes of the real and personal estate of a decedent, after payment of his debts and which shall not have been sold or disposed of by will, and contains a general repealing clause. It makes no change in the portion of the estate which goes to the widow where there is surviving issue. Where, however, the intestate leaves no issue but a widow and collateral heirs, article 2, section 1, provides: "Where such intestate shall leave a widow, and collateral heirs or other kindred, but no issue, such widow shall be entitled to the real or personal estate, or both, to the aggregate value of five thousand dollars, in addition to the widow's exemption as allowed by law; and if such es-

tate shall exceed in value the sum of five thousand dollars, the widow shall be entitled to such sum of five thousand dollars absolutely, to be chosen by her from the real or personal estate, or both; and, in addition thereto, shall be entitled to one-half part of the remaining real estate, for the term of her life, and to one-half part of the remaining personal estate, absolutely: provided, that the procedure for appraising and setting apart the said five thousand dollars in value of property shall be the same as provided in section five of the act of assembly, approved April fourteenth, one thousand eight hundred and fifty-one, relating to widows' exemptions."

In support of his position, the learned counsel for the appellant contends that the widow of a testate, electing to take against his will, is entitled only to such part of the testator's estate as was given her by the intestate laws in force at the time of the enactment of the acts of 1848 and 1869, on the principle that if an act adopt the provisions of a preceding act, an amendment or repeal of the latter will not extend, limit or repeal the former. The rule of construction, suggested by counsel, is uniformly recognized and enforced. If a statute specifically adopts a former statute or particular provisions of a former statute by reference to its title or otherwise, such statute or particular provisions thereof become a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act, but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared or is clearly implied. While this general rule of statutory construction is well settled and recognized by judicial decisions as well as by text writers, yet it is equally well established as a rule of statutory construction that where the reference in an adopting statute is to the law generally which governs the particular subject, and not to any specific act or part thereof desig-

nated in the adopting act, the reference means the law at the time the exigency arises as to which the law is to be applied. We have frequently recognized this distinction and applied the rule that where the reference in an adopting statute is to the law generally upon any subject, the adopting statute means the law in force on the subject at the time it is invoked: In re Vernon Park, 163 Pa. 70; Kugler's Appeal, 55 Pa. 123. The learned counsel for the appellant apparently concedes that the latter is the proper rule of construction where the act adopts a prior procedural statute, but not a statute affecting substantial rights. We do not agree that such distinction is tenable, and have been cited to no authority that supports it. The numerous cases cited by the learned counsel for the appellant do not sustain his position. They are clearly distinguishable on the ground that the adopting act referred to a special or particular statute or to a special or local law or to a particular section or provision of another act. On reason there can be no distinction between acts relating or referring to procedure and acts affecting substantive rights. When an adopting statute refers generally to the law affecting substantive rights it evidently means that it is to be the law in effect at the time its provisions are invoked. It is the law, whatever it may be at the time the facts require its application, that the adopting act means to declare shall regulate the subject to which it relates. If, on the other hand, the adopting act declares as the law of the state any specific statute or part thereof it is equally manifest the legislature intends that the specific provisions thus adopted, and they alone, shall be the law in such cases. When therefore the adopting act declares generally that the law relating to any particular subject, and not a specific act, local or general, shall be the law regulating the subject, the legislative intent is that the adopting act refers to the law in force at the time when it is invoked. We think that this rule of construction applies whether

the former act is procedural or affects substantive
rights. It has been so held in other jurisdictions:
Jones v. Dexter, 8 Fla. 276, Harris v. White, 81 N. Y.·
532. Therefore, a widow who elects to take against her
husband's will is entitled under the acts of 1848 and
1869 to take under the intestate laws in force at the
time of the death of her husband.

We recognize the principle urged by the appellant
that a statute will be so construed as to interfere as
little as possible with the right of a person to dispose
of his property as he pleases, and that it will not be
presumed that the legislature intends to alter an ex-
isting law beyond the immediate scope of the amending
act. We fail, however, to see wherein these rules can
be invoked to sustain the position of the appellant.
The legislature has authority to determine the course
of descent in case of intestacy and in whom the prop-
erty of an intestate shall vest at the time of his death.
Such authority has never been questioned, and it is
universally exercised by the legislatures of the states of
this union. Nor is there any natural or inherent right
in any person to make a testamentary disposition of his
property. The authority to make a will is statutory.
The legislature, subject to constitutional provisions,
may declare that the owner of property may dispose of
all or any part of it by will, and to the exclusion of his
widow or his issue. In the exercise of the same au-
thority, the legislature may declare that no person
shall dispose of any part of his property, and that after
his death it shall descend or vest in any person or per-
sons which it may designate. Such power is lodged
with the legislature and it has uniformly exercised it.
We have an illustration in this state. While the Wills
Act of 1833 permitted every person of sound mind to
dispose of his property by will, it excepted from its
provisions married women and infants under the age of
twenty-one years. It was not until fifteen years later
that our legislature, recognizing the injustice of de-

priving a married woman of the right to make a testamentary disposition of her own property, authorized her by the act of 1848 to dispose of it by will, executed in a prescribed form, and it was not until fifty-four years after "any person of sound mind" was clothed with legislative authority to "dispose by will of his or her real estate" by the act of 1833 that the legislature, by the statute of June 3, 1887, P. L. 332, enacted that a married woman might dispose of her property by will "in the same manner as if she were unmarried." The age of testacy, however, remains as it was fixed by the act of 1833, and every person in this state, irrespective of sex, intelligence, or the value of the property who is under the age of twenty-one years, is without authority to dispose of an estate by will.

Exercising the power reposed in it, the general assembly has, by the legislation above referred to, regulated the disposition of estates left by testates as wel¹ as intestates. It is seen that by the Wills Act of 1833 the widow cannot be deprived of her dower in the estate of her husband by any will he may make; that by the act of 1848, the widow electing to take against the provisions of her husband's will is entitled to her share of the personal estate under the intestate laws; and that by the act of 1869 in case of her election to take against the will she shall be entitled to such interest in the real estate of her deceased husband as widows of intestate decedents are entitled to under the existing laws of the commonwealth. The effect of this legislation is manifestly to declare that, at the option of the widow, a testator dies intestate as to that portion of his estate to which she is entitled under the several statutory provisions. Had the legislature made such a declaration in terms its intention could not be plainer nor more apparent. As to part of his estate, therefore, such decedent dies testate, and as to the other part of his estate, by the express declaration of the statutes,

his widow takes her share under the intestate laws, and necessarily he dies intestate.

We must assume that the legislature knew at the time of the passage of the act of 1909 the status of the legislation on the subject with which it dealt. It knew that where an intestate left a widow and collateral heirs but no issue the widow was entitled to a certain portion of his estate. It also knew that where a decedent died testate and his widow elected to take against his will that she was entitled to her share of the personal estate under the intestate laws, the effect of which was that the decedent died intestate as to that portion of his estate. It was in the light of this legislation that the act of 1909 was passed to amend the act relating to the descent and distribution of the estates of intestates. It dealt with and included estates which were taken by widows by virtue of the intestate laws of the commonwealth, whether there was a total or partial intestacy. It did not intend to make a distinction between widows whose husbands died without wills and those who elected to take against their husbands' wills, thereby creating a partial intestacy. There was certainly no intention on the part of the legislature in passing the act of 1909 to make a distinction, and to give the widow of a husband dying intestate five thousand dollars more than the widow who elects to take against her husband's will and, therefore, under the intestate laws. Such distinction does not clearly appear by the act of 1909 and hence it will not be presumed that the legislature intended it. The purpose of the act of 1909 was simply to give to the widow of a decedent who died without issue the sum of five thousand dollars in addition to that part of his estate given her by the intestate act of April 8, 1833. We have construed the provisions of that act applying to such widows, and held that on her election she had the right to take the portion of the decedent's estate given her by that statute. In dealing with the subject and in increasing

the amount to which a widow under such circumstances would be entitled, the legislature presumed that the same interpretation would be given the similar provision of the act of 1909, and that a testator would be regarded, as the statute declares, as dying intestate as to that part of his estate which his widow elects to take against his will. The general assembly, therefore, correctly dealt with the five thousand dollars as a part of an intestate's estate, and not as a part of a testate's estate.

There is no merit in the contention that the act of 1909 offends article III, section 6, of the constitution. It applies to the estates of intestates and to that part of the estates of testates as to which the decedent dies intestate. As suggested above, that portion of a testator's estate which the widow elects to take against her husband's will comes to her by virtue of the statutes, not as the estate of a testate and as such devised or bequeathed to her, but as an estate of an intestate. By the express provision of the act of 1848, she takes under the intestate laws of the commonwealth and, hence, as to that portion of the estate her husband necessarily dies intestate. The title of the act of 1909 is, therefore, germane to the subject of the body of the act, and does not offend the constitution.

The decree of the court below is affirmed.