# Gwynn's Estate (No. 1).

*Decedent's estate — Intestacy — Widow and collateral heirs — Widow's preferential claim — Real estate — Character of title — "Blood of first purchaser"—Act of April 1, 1909, P. L. 87—Appraisement.*

1. The Act of April 1, 1909, P. L. 87, providing that where an intestate leaves a widow and collateral heirs but no issue "such widow shall be entitled to the real or personal estate or both to the aggregate value of five thousand dollars......and if such estate shall exceed in value the sum of five thousand dollars, the widow shall be entitled to such sum of five thousand dollars absolutely, to be chosen by her from the real or personal estate or both," gives the widow a fee in the real estate of her husband which she chooses to take under its provisions, and the rights of the widow are not affected by the sources from which the husband derived his title, whether he was perquisitor or purchaser, or took his title by descent.

2. The proviso to the ninth section of the Act of April 8, 1833, P. L. 315, limiting the right of inheritance to persons of the blood of the ancestor, applies only to estates of inheritance and is, therefore, inapplicable to the interest or estate which a widow takes under section one of the act, which section the Act of April 1, 1909, amends; but if there is anything in the Act of 1833 repugnant to the legislative intention, as is manifested in the Act

of 1909, to give a widow an absolute estate, it gives way to the later enactment.

3. The Act of April 1, 1909, P. L. 87, in express terms adopts for appraising and setting apart the widow's $5,000 interest either in real or personal property the method of procedure mentioned in the fifth section of the Act of April 14, 1851, P. L. 612, making it the duty of the executor or administrator to choose three disinterested and competent persons to make the appraisement, in the manner provided by the Debtor's Exemption Act of April 9, 1849, P. L. 533, and a decree based upon an appraisement otherwise made must be reversed.

Argued Oct. 14, 1912. Appeal, No. 153, Oct. T., 1912, by Frank Gwynn, Remembrance Gwynn, Jesse Gwynn, Albert Gwynn, Frances Wise and Ida M. Inghram, from decree of O. C. Greene Co., March Court, 1911, No. 53, affirming appraisement of real estate set apart for widow in the Estate of Thomas H. Gwynn, deceased. Before BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Inventory and appraisement of real estate to be retained by widow under the Act of Assembly of April 1, 1909, P. L. 87.

The facts are stated in the opinion of the Supreme Court.

The real estate of decedent was appraised by the appraisers of the personal property and the widow's exemption, and awarded to his widow Ida M. Gwynn.

Exceptions to the appraisement and award were filed by the mother and collateral heirs of decedent and were subsequently dismissed.

The mother and collateral heirs appealed.

*Errors assigned* were the overruling of the exceptions and the decree of the court.

*James J. Purman,* for appellants.

*F. W. Downey,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 13, 1913:

The questions raised by this appeal relate to the right of the widow to take a fee simple title to the real estate of her husband, who died intestate and without issue, under the Act of April 1, 1909, P. L. 87. Counsel on both sides have presented interesting and able arguments in support of their contentions. It is contended for appellants that the Act of 1909 can only operate upon and pass title to a surviving widow of such lands of her deceased husband as he acquired as perquisitor or purchaser, and that the act has no application to real estate which descended to her husband as an heir of his father. The answer to this position necessarily depends upon the construction to be given the Act of 1909. Article 2 of the amended section provides, inter alia, as follows: "Where such intestate shall leave a widow, and collateral heirs or other kindred, but no issue, such widow shall be entitled to the real or personal estate, or both, to the aggregate value of five thousand dollars, in addition to the widow's exemption as allowed by law; and if such estate shall exceed in value the sum of five thousand dollars, the widow shall be entitled to such sum of five thousand dollars absolutely, to be chosen by her from the real or personal estate or both; and, in addition thereto shall be entitled to one-half part of the remaining real estate for the term of her life, and to one-half part of the remaining personal estate absolutely ......." If this were an original act, or if its provisions stood alone, unqualified by any other statute or rule of law, no one could seriously question what the legislature intended to. do. The act says that where the intestate husband shall leave a widow, and collateral heirs, or other kindred, but no issue, the widow shall be entitled to real or personal estate, or both, to the aggregate value of five thousand dollars, in addition to the exemption allowed by law. In the case at bar the husband died intestate leaving a widow and collateral heirs, but no issue, and therefore the estate left by him comes clearly

within the express provisions of the Act of 1909. This is an act relating to the descent and distribution of the estates of intestates and the power of the legislature to pass such legislation is not questioned. Descent and distribution of the estates of intestates follow the course provided by law, and we must always look to the statutes to ascertain what interest, share or estate the widow and heirs take: Gilbert's Est., 227 Pa. 648; Guenthoer's Est., 235 Pa. 67. In the present case we are asked to determine what kind of an estate, if any, the widow took in the lands of her deceased husband set apart to her under the provisions of the Act of 1909. Did she take a fee simple title, or only a life estate, or was she denied the right to take any estate because her husband inherited title from his father? Can there be any doubt about this if we give the legislative language its plain meaning? The widow is entitled to real or personal estate, or both, to the aggregate value of five thousand dollars. She can take the amount allowed her in personal property, or in real estate, without limitation as to her absolute right to use, enjoy and dispose of it as she may choose. In other words, whatever estate she takes is an absolute one. This intention plainly appears in the following language, "if such estate shall exceed in value the sum of five thousand dollars, the widow shall be entitled to such sum of five thousand dollars, absolutely, to be chosen by her from the real or personal estate, or both." The act gives the widow five thousand dollars absolutely, not conditionally, with the right to choose personal property, or real estate, or both, of that value. The act makes no distinction as to the absolute character of the title between personal property and real estate. The plain intention of the act is to give the widow an absolute title to whatever kind of property, real or personal, she may choose to take. This being what we construe the plain meaning of the Act of 1909 to be when read by itself and standing alone, it still remains to be determined whether this act read in connec-

tion with the Act of April 8, 1833, P. L. 315, the first section of which it amends, makes it necessary to adopt a different construction. The learned counsel for appellants contends with much force and ability that the proviso to section nine of the Act of 1833 is a limitation on section one of that act, and that this limitation must be held to apply to the section as amended by the Act of 1909. The proviso to section nine of the Act of 1833 relied on reads as follows: "That no person who is not of the blood of the ancestors or other relations from whom any real estate descended, or by whom it was given or devised to the intestate, shall in any of the cases before mentioned, take any estate of inheritance therein; but such real estate, subject to such life estate as may be in existence by virtue of this act, shall pass to and vest in such other persons as would be entitled by this act, if the persons not of the blood of such ancestor or other relation had never existed, or were dead at the decease of the intestate." It is argued that this proviso limits the right of inheritance to those of the blood of the ancestor and that a widow not being of the blood of the ancestor can not inherit. This of course would necessarily follow in the absence of legislation giving the widow the right to take an estate of inheritance, but in the present case the widow points to the Act of 1909 which in express words gives her an absolute estate in the real or personal property of her husband to the aggregate value of five thousand dollars. The proviso to the ninth section of the Act of 1833 relates to estates of inheritance and the rule limiting the right of inheritance to persons of the blood of the ancestor undoubtedly applies to such estates. Section one of the Act of 1833 did not give an estate of inheritance to anyone. Article two of this section gave the widow of a deceased husband who died without issue a life estate in one-half of the real estate, including the mansion house, of which he died seized. She took no estate of inheritance under this section—only a life interest. It, therefore, would seem

to be a strained construction of the proviso, which in terms applied to estates of inheritance, to hold that it referred to and included the interest of a widow in the real estate of her deceased husband, which was not an estate of inheritance. Life estates are plainly excepted and protected by the proviso to section nine from the rule applicable to estates of inheritance, and the conclusion seems irresistible that this proviso was not intended to apply to the interest or estate which the widow took under section one of the Act of 1833. But whether this be the correct view or not, it is perfectly clear that the Act of 1909 gives the widow an absolute estate in the real estate of her husband which she chooses to take under its provisions. If then, the Act of 1909 be read into the Act of 1833 so as to form one complete statute relating to the descent and distribution of the estates of intestates, the whole statute must be construed so as to give force and effect to the plain intention of the legislature. The plain intention of the legislature as manifested in the Act of 1909 was to give the widow an absolute estate, and if there be anything repugnant to this intention in the Act of 1833, it must give way to the later enactment. The rights of the widow are not affected by the source from which the husband derived his title. She takes an estate in fee simple no matter whether the husband was perquisitor, or purchaser, or took his title by descent.

Another question has been raised by this appeal and must be determined. Appellants contend that the appraisement in the present case was not legally made because the two appraisers appointed to appraise the personal property and the widow's exemption, appraised the real estate chosen by the widow on account of the five thousand dollars to which she was entitled under the Act of 1909. The appraisement was so made and it is important to determine whether this was the proper method of procedure. This is the first time the question has been raised before this court. The Act of 1909 pro-

vides: "That the procedure for appraising and setting apart the said five thousand dollars in value of property shall be the same as provided in section five of the act of assembly, approved April fourteenth, one thousand eight hundred and fifty-one, relating to widows' exemptions." Turning to section five of the Act of April 14, 1851, P. L. 612, we find that it is made the duty of the executor or administrator to have the property appraised in the same manner as is provided in the debtor's exemption Act of April 9, 1849, P. L. 533. The Act of 1851 does not provide in terms a definite method of procedure for making the appraisement, but simply adopts the method provided in the Act of 1849, which act requires the appointment of three appraisers. This is what the plain language of the Act of 1909 says and we know no reason why the manifest intention of the legislature should not prevail. It is argued for appellee that the Act of April 8, 1859, P. L. 425, should be read into the Act of 1851, and be considered as in pari materia with that act in determining the proper construction to be given the Act of 1909. The difficulty with this position is that the legislature in 1909 acted with knowledge of the provisions of the Acts of 1851 and 1859, and when it adopted the method of procedure mentioned in the former and said nothing about the later act, the presumption is that it intended to adopt the particular procedure referred to, and no other. The Act of 1859 was not an amendment, or a supplement; it was an original statute. It provides that where property shall be set apart for the widow of a decedent, the appraisement shall be made by the appraisers of the personal property, and this has been the law ever since. It was the law in 1909, and if the legislature intended that method of procedure to be followed in the appraisement of property taken by the widow on account of the five thousand dollars given her, it would have been an easy matter to have thus provided. It was not so provided and the inference is that it was not so intended. The question

seems to be ruled by what was said by this court in construing the Act of 1909 in the very recent case of Guenthoer's Estate, supra. It is true the same provisions of the act were not then under consideration, but the same rule of construction applies. In that case our Brother MESTREZAT, speaking for the court, said: "When an adopting statute refers generally to the law affecting substantive rights it evidently means that it is to be the law in effect at the time its provisions are invoked. It is the law, whatever it may be at the time the facts require its application, that the adopting act means to declare shall regulate the subject to which it relates. If, on the other hand, the adopting act declares as the law of the State any specific statute or part thereof it is equally manifest the legislature intends that the specific provisions thus adopted, and they alone, shall be the law in such cases." It is conceded that this rule of construction applies with even greater force to statutes regulating methods of procedure. The Act of 1909 in express terms adopts the method of procedure mentioned in the fifth section of the Act of 1851, thus adopting the specific section of a particular act. We therefore see no escape from the conclusion that the procedure thus adopted, and that alone, must prevail. The procedure required by the Act of 1909 not having been followed, and that question having been raised before final confirmation, in the present case, the decree must be reversed. All other assignments of error are overruled. The fifth section of the Act of 1851 makes it the duty of the executor or administrator to have the property taken by the widow appraised in the manner provided by the exemption Act of 1849. This means that it is the duty of the executor or administrator, as the case may be, to choose three disinterested and competent persons to make the appraisement.

Decree reversed and record remitted with permission to have appraisers appointed and the property set apart for the widow in accordance with the views hereinbefore expressed. Costs to be paid out of the estate.