## Mitchell's Estate.

*Decedents' estates — $5000 exemption — Rents—Inheritance tax—Acts of April 1, 1909, June 7, 1917, July 11, 1917, and June 20, 1919.*

1. The legislature has authority to determine in whom the property of an intestate shall vest upon his death, and, in the exercise of this authority, it declared by the Act of April 1, 1909, P. L. 87, that the widow of a decedent who died without issue should have $5000 in addition to that part of his estate given her by the Intestate Act of April 8, 1833, P. L. 249. The Act of July 11, 1917, P. L. 755, retains the provision of $5000 to the widow contained in the Act of 1909 and enlarges it to include the husband. So that this specified sum of $5000 is given to the surviving spouse.

2. The surviving spouse is entitled to all of the rents which were or might have been realized from the use of the personal property set apart to him. And he is entitled to his proportionate part only of the total rentals accruing from the real estate and the heirs to the remainder.

3. Under the Act of June 20, 1919, P. L. 521, the exemption is subject to the inheritance transfer tax.

Exceptions to administrator's account. O. C. Erie Co., Feb. T., 1922, No. 42.

*H. L. Moore*, for exceptant; *A. W. Mitchell*, for accountant, contra.

CLARK, P. J., April 5, 1922.—Nov. 4, 1920, Anna E. Axworthy Mitchell died intestate and without issue, leaving real and personal property in excess of $5000 and a surviving husband, the administrator, A. J. Mitchell, who claimed $5000 out of the real and personal estate, under the provisions of the Intestate Act of June 7, 1917, P. L. 429.

The real estate consisted of a lot and a dwelling-house thereon, where the decedent and accountant resided.

The contents of the house were appraised at $3119.75 and set aside to the husband. The real estate was sold for $8000, and $1880.25 from this sum was given to the surviving spouse, making the full $5000 claimed by him. There were separate decrees of court confirming this.

The accountant lived in the house from the date of his wife's death until it was sold, a period of time agreed upon to be six and one-half months. It was agreed by counsel, and established by the evidence, that the fair rental value of the house, furnished, is $50 per month, $325 for the period of occupancy and $25 per month, unfurnished, $162.50 for the same length of time.

Creditors, costs of administration, including the inheritance tax, have all been paid out of the estate; after deducting these payments and the $5000 from the assets of the estate, there is a balance in the hands of the administrator of $3542.72 for distribution.

The exceptant claims: First, that the accountant should be charged for the use and occupancy of the house from decedent's death, six and one-half months, at the rate of $50 per month; and, second, that the $5000 should be reduced by the amount of the inheritance tax, $100.

Is the administrator to account for the use and occupancy as rent of the entire contents of the house, the personal property set apart to him?

An act of assembly answers this question in the negative. The act provides that: "In all cases where the appraisement of property, real or personal, or both, is confirmed, and the property set apart to the surviving spouse under the provisions of this section, said surviving spouse shall be entitled to receive, for his or her own use, the net rents, income, interest and dividends thereof from the date of the death of such intestate:" Intestate Act of June 7, 1917, § 2 *(f)*, P. L. 429, 433.

This was new legislation at the time when it was enacted.

The surviving spouse is entitled to all of the rents which were or might have been realized from the use of the personal property set apart to him. To that extent, in this case to the amount of $162.50, the exception is disallowed.

As to the use and occupancy of the real estate, the same act applies: "Whenever the surviving spouse of any intestate shall claim the said $5000 in value, or any part thereof, under the provisions of this act, out of the real estate left by said intestate, and the real estate appraised cannot be divided so as to set apart the amount so claimed in value without prejudice to or spoiling the whole or any parcel of said real estate, and the appraisers shall appraise and value the same at any sum exceeding the amount so claimed, it shall be lawful for the Orphans' Court to which such application shall be made to confirm such appraisement and to set apart for the use of the surviving spouse such real estate, conditioned, however, that the said surviving spouse shall pay the amount of the valuation or appraisement in excess of the amount so claimed within one year from the date of confirmation of such valuation. If the said surviving spouse shall refuse to take the real estate at such appraisement, or shall fail to make payment as above provided, the court, on application of any person interested, shall direct the executor or administrator to sell the same, and the procedure in such case shall be the same as is provided by law in cases of sales of real estate for the payment of debts of a decedent:" Intestate Act of June 7, 1917, § 2 *(d)*, P. L. 429, 432. The provisions of this paragraph governed the sale in the case under consideration.

". . . Where the property set apart shall consist of real estate appraised at a sum in excess of $5000, or such part thereof as may be claimed out of the real estate, and the surviving spouse shall fail to pay the excess over the amount so claimed, as provided in clause *(d)* of this section, and the property shall thereupon be sold, there shall be deducted from the sum to be paid to said surviving spouse out of the proceeds of such sale a proportionate part of the rents and income of such real estate received by such surviving spouse:" Intestate Act of June 7, 1917, § 2 *(f)*, P. L. 429, 433.

The special allowance is an amendment to the intestate laws, and determines the rights of the surviving spouse as of the intestate's death: Fretz's Estate, 28 Dist. R. 645.

These plain provisions entitled the accountant to his proportionate part only of the total rentals accruing from the real estate of $162.25, and the heirs to the remainder, and to this extent the exception is sustained.

Is the $5000 set apart for the surviving spouse by act of assembly to bear any part of the administration expenses when the estate exceeds $5000 over and above all liabilities? Must the 2 per cent. inheritance tax be deducted from it?

The Act of April 1, 1909, P. L. 87, amends "An act relating to the descent and distribution of the estates of intestates, passed and approved April 8, 1833, P. L. 249, defining and declaring the interest that shall descend to and

2 D. & C.

Mitchell's Estate.

vest in the surviving husband or wife of each intestate," and provides in article II as follows: "Where such intestate shall leave a widow and collateral heirs or other kindred, but no issue, such widow shall be entitled to the real or personal estate, or both, to the aggregate value of $5000, in addition to the widow's exemption as allowed by law; and if such estate shall exceed in value the sum of $5000, the widow shall be entitled to such sum of $5000 abolutely, to be chosen by her from the real or personal estate."

The Act of June 7, 1917, P. L. 429, amended by the Act of July 11, 1917, P. L. 755, relates to the descent and distribution of the estates of intestates, and section 2 provides that: "Where such intestate shall leave a spouse surviving and other kindred, but no issue, the surviving spouse shall be entitled to the real and personal estate, or both, to the aggregate value of $5000, in addition, in the case of a widow, to the widow's exemption as allowed by law; and if such estate shall exceed in value the sum of $5000, the surviving spouse shall be entitled to the sum of $5000 absolutely, to be chosen by him or her from real or personal estate, or both."

This act repeals the Act of April 1, 1909, P. L. 87, but its $5000 provision relates to the surviving spouse, husband or wife, instead of to the widow only.

The legislature has authority to determine in whom the property of an intestate shall vest upon his death, and, in the exercise of this authority, it declared by the Act of 1909 that the widow of a decedent who died without issue should have $5000 in addition to that part of his estate given her by the Intestate Act of April 8, 1833, P. L. 249.

The share of $5000 given the widow is a preference: Guenthoer's Estate, 235 Pa. 67, affirming Guenthoer's Estate, 20 Dist. R. 704, 39 Pa. C. C. Reps. 158.

The Act of 1917 retains the provision of $5000 to the widow contained in the Act of 1909, and enlarges it to include the husband. So that this specified sum of $5000 is given to the surviving spouse.

This share is a larger share, an additional one, a vested interest at the death of the wife when the status of the estate was fixed by operation of law. $5000 was set apart in Desmond's Estate, 28 Dist. R. 231.

In a recent decision, Nov. 18, 1921, it appears that $5000 was set apart for a widow under the Act of 1917, and the appraisement was confirmed by the court. At the audit, the widow requested a further allowance, viz., the expenses of appraisement, and it was held that these expenses should be allowed, and she received the full $5000: Jacobs's Estate, 1 D. & C. 6.

Some of the decisions examined tend to show that the $5000 is set apart intact, and such has to some extent been the practice in this court.

Counsel have not called attention to any authority wherein the question involved here has been decided, and we have not found any.

The Act of July 11, 1917, P. L. 832, and the Act of June 20, 1919, P. L. 521, which latter act enlarged and in part repealed the former, both contain, in section 11 of the former and section 16 of the latter, the following: "The executor or administrator or other trustee, paying any *legacy* or *share* in the distribution of any estate subject to the said tax, shall deduct therefrom at the rate of $2 in every $100" in the Act of 1917, and "at the rate of 2 per centum" in the Act of 1919, "upon the whole legacy or sum paid. . . ." All acts or parts of acts inconsistent with the Act of 1919 were repealed.

The $5000 comes out of the estate, is a *part* of it, is a *share* of it. The $5000 is not to be set apart to the detriment of creditors; it is included in ascertaining the clear value of the estate for assessment purposes. It often happens that less than the specified $5000 is awarded.

Mitchell's Estate.

If the net value of an estate, after all debts had been paid, exclusive of unpaid inheritance tax, were just $5000 or less, it would still be liable for the inheritance tax, why not in all cases? The rule should be inflexible and not variable.

We are, therefore, of the opinion in this case that the administrator should have deducted the inheritance tax of 2 per cent. from the $5000, and not having done so, he is surcharged with that amount, viz., $100. This exception is sustained.

Briefly, the accountant is entitled to the rents accruing from the contents of the house, and to his proportionate part only of the rentals from the use and occupancy of the house. He is chargeable with 2 per cent. inheritance tax on the $5000 paid by himself, as administrator, to himself as surviving spouse.

And now, to wit, April 5, 1922, a decree will be entered in accordance with the foregoing opinion, and, conforming to the conclusions therein, counsel for accountant is directed to prepare and submit a schedule of distribution.