In re Hoover & Co. et al.

Thomas O. Haydock, George L. Reed and Hugh Roberts, for complainants.

Cyrus E. Woods, Attorney-General, and Penrose Hertzler, Deputy Attorney-General, for Commonwealth.

WICKERSHAM, J., July 7, 1930.—This is an appeal from the decision of the Department of Public Instruction of the Commonwealth of Pennsylvania in suspending the licenses of the appellants under the provisions of the Act of May 1, 1929, P. L. 1216.

The questions involved are:

1. Is there any legally competent evidence in the record to sustain the finding of the Department of Public Instruction that the licensee, J. L. Jordan, obtained the agreements of sale from the complainants, Anna and Joseph Bobb, by making substantial misrepresentations relative to the check for the "down money," and that he persuaded complainants to permit him to retain the agreements by falsely promising to deliver the check to them, properly endorsed?

2. If it is a fact that the licensee, J. L. Jordan, made substantial misrepresentations and knowingly made false promises for the purpose of inducing the complainants to sign the agreements of sale, was the Department of Public Instruction vested with authority to suspend the license?

It appeared from the evidence that one of the appellants, J. L. Jordan, a licensed real estate agent, and member of the firm of Hoover & Company,

was authorized and employed to sell certain real estate in the City of Philadelphia by Anna and Joseph Bobb, the owners thereof. The property was sold to and purchased by Alice C. Bassett. Articles of agreement for the sale of said real estate of said Anna and Joseph Bobb to the said Alice C. Bassett were prepared by her attorney. These articles of agreement were signed by the said Alice C. Bassett on or about Jan. 22, 1930, upon the execution of which she gave to the said J. L. Jordan her check for $1000 "down money," made payable to Hoover & Company. Jordan then took the said articles of agreement to Anna and Joseph Bobb at their home the same evening, about 8 o'clock. He told them the property was sold, laid the check for $1000 on the table and requested the said Bobbs to sign the articles, which they did. They then directed Jordan's attention to the fact that the check for the "down money" was not made payable to them, but to Hoover & Company. Jordan told them he would take the check with him, have it endorsed, and return it to them the next day—or, perhaps, that he would send them a check the next day. He then left the residence of the Bobbs, taking with him the check and the articles of agreement. A copy of the agreement was left with the Bobbs and forms a part of the record in this case. The Bobbs did not sign the receipt for the "down money," as it was called, but after Jordan left their residence he himself signed the receipt with the names of Anna Bobb and Joseph Bobb, per Hoover & Company, agents, and returned it to the attorney representing Mrs. Bassett. Hoover & Company did not return the said check nor the check of Hoover & Company to the Bobbs the next day, nor on any other day, and so far as the evidence goes that firm still holds the check. The sale was never consummated. It appears from the evidence there was some difficulty about the title of the Bobbs; that the title appeared to be in the name of Joseph Bobb and not Anna Bobb, and that there were many judgments of record in Philadelphia County against Joseph Bobb. Hoover & Company claimed the right to retain the check for $1000 as their commission on the said sale, the consideration for which was $20,000. The intention to so hold the check was not communicated to the Bobbs at the time the agreement was signed by them.

It is the contention of Hoover & Company that they were entitled to a commission of 5 per cent.; the Bobbs, on the other hand, claim the commission was only to be 2½ per cent. We do not think this controversy is material to the disposition of the litigation now pending.

On Jan. 31, 1930, Hoover & Company notified the Bobbs in writing that they were requested by Mrs. Bassett to hold the check for $1000 until settlement; the letter stating "she had certain reasons for making this request which are immaterial, inasmuch as we told you how the deposit was to be handled."

On Feb. 14th, a formal complaint was made by Joseph and Anna Bobb to Robert W. Semenow, Supervisor of Real Estate Licensing, Department of Public Instruction, Harrisburg, Pa. The licensee was notified of the complaint by the department and a hearing was held in Philadelphia on March 4, 1930, at which time the complainants, together with their witnesses, and the licensee appeared and testified.

On April 3, 1930, the Department of Public Instruction made certain findings of fact and concluded as a matter of law that the license of J. L. Jordan should be suspended for a period of sixty days, and that the license for the firm of Hoover & Company should be suspended for a similar length of time if Jordan did not sever his connection with the firm. This order was

amended on April 23, 1930, to take effect on May 16th, in order that the licensees should have the required time within which to take an appeal.

Notice of appeal was served upon the Department of Public Instruction of the Commonwealth of Pennsylvania on April 25, 1930, and the department was requested to complete the record and file the same in accordance with the said Act of 1929. This appeal was filed in the Court of Common Pleas of Dauphin County on May 26, 1930; it was accompanied by numerous exceptions to the findings of fact and conclusions of law of said department, and to the order suspending the licenses for a period of sixty days.

Under the provisions of said Act of May 1, 1929, P. L. 1216, known as the "Real Estate Brokers License Act," the terms "real estate broker" and "real estate salesman" are defined in section 2. In paragraph *(d)* of section 2 of said act, "the term 'department' shall mean the Department of Public Instruction of this Commonwealth." Under section 3 of the act, "the department shall issue real estate brokers' and salesmen's licenses under the provisions of this act, and shall supervise and control all such licenses as hereinafter specifically provided." Sections 4 and 5 provide for departmental regulations. Section 6 provides that "from and after January 1, 1930, it shall be unlawful for any person, copartnership, association or corporation to engage in or carry on the business, or act in the capacity of a real estate broker, or a real estate salesman, within this Commonwealth, without first obtaining a license as a real estate broker or real estate salesman from the department." Section 7 fixes the practice relating to applications for brokers' licenses, the recommendations required, the duty to issue licenses upon the payment of license fees required by the act to real estate brokers or salesmen, and other matters relating to the regulation and licensing of brokers and salesmen of real estate. Section 8 fixes the fees to be paid by applicants for licenses; and section 9 regulates the place of business to be maintained, the persons to have charge of the office, display of salesmen's licenses, and notice of change of employer.

These proceedings were had under section 10 of the act, which provides:

"*(a)* The department may, upon its own motion, and shall, promptly upon the verified complaint in writing of any person setting forth specifically the wrongful act or acts complained of, investigate any action or business transaction of any licensed real estate broker or real estate salesman; and shall have the power temporarily to suspend or permanently to revoke licenses theretofore issued by the department, under the provisions of this act, at any time when, after due proceedings as hereinafter provided, it shall find the holder thereof to have been guilty in the performance or attempt to perform any of the acts prohibited to others than licensed real estate brokers or real estate salesmen under the provisions of this act,

"(1) Of knowingly making any substantial misrepresentation; or,

"(2) Of knowingly making any false promise of a character likely to influence, persuade or induce; or,

"(3) Of a continued or flagrant course of misrepresentation, or making of false promises through agents or salesmen; or,

"(4) Of any other conduct, whether of the same or of a different character than that hereinbefore specified, which shall constitute a tort, or when it shall be shown that the licensee, within five years prior to the issuance of the license then in force, has been convicted in any court of competent jurisdiction of this or any other state of forgery, embezzlement, obtaining money under false pretenses, extortion, conspiracy to defraud, or other like offense or offenses."

Paragraph *(b)* of section 10 provides, *inter alia,* that "before refusing, suspending or revoking any license, the department shall, in writing, notify the applicant or licensee of the charges against him, accompanying the notice with a copy of the complaint, if any filed, and the department shall accord the applicant or licensee ample opportunity to be heard thereon in person or by counsel. . . ." This practice was followed in the present proceeding.

Paragraph *(d)* of section 10 provides that "the decision of the department in suspending or revoking any license issued under this act shall be subject to review by the Court of Common Pleas of Dauphin County. . . . The appeal shall thereupon be heard, in due course, by the judge or judges of the said Court of Common Pleas, without a jury, by whom the proceedings before the department, its findings and rulings, shall be given similar weight, force and effect as are accorded to the findings and report of a referee selected or appointed under the provisions of the act entitled 'An act to provide for the submission of civil cases by agreement of the parties to a referee learned in the law,' approved the fourteenth day of May, one thousand eight hundred and seventy-four, and its supplements. The court may, however, in its discretion, receive and consider any additional pertinent evidence, whether oral or written, either in open court or by deposition, as the said court shall direct, and the decision of the department shall be reviewed in the light of such evidence, provided the court shall order a trial by jury upon demand of any appellant."

It was suggested at the oral argument before the court *in banc* that paragraph *(d)* of section 10 of the act, which provides that the proceedings before the department, its findings and rulings, shall be given similar weight, force and effect as are accorded to the findings and report of a referee selected or appointed under the provisions of the act entitled "An act to provide for the submission of civil cases by agreement of the parties to a referee learned in the law," approved May 14, 1874 [P. L. 166], and its supplement, might possibly offend against section 6 of article III of the Constitution of Pennsylvania, which provides that "No law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be reënacted and published at length."

This provision of the Constitution has been interpreted very frequently by the Supreme Court of Pennsylvania. When there is an established system of procedure in certain cases, whether it be by common law or statute or joint operation of both, a new act applying such system to a new class of cases by general reference to it is not a violation of section 6, article III, although it may operate, to some extent, as an extension of a previous statute: James Smith Woolen Machinery Co. *v.* Browne, 206 Pa. 543. The constitutional provision has reference to express amendments only. Its object, like that of section 2 of the same article, requiring each act to have its subject clearly expressed in the title, was to secure to the legislators themselves and others interested direct notice, in immediate connection with the proposed legislation, of its subject and purpose. The Constitution does not make the obviously impracticable requirement that every act shall recite all other acts that its operation may incidentally affect, either by way of repeal, modification, extension or supply: Searight's Estate, Stuart's Appeal, 163 Pa. 210; In re Greenfield Avenue, Pittsburgh's Appeal, 191 Pa. 290; Com. *v.* Samuel Black Co., 223 Pa. 74, 78; Gilbert's Estate, 227 Pa. 648, 651; Garrett *v.* Turner, 235 Pa. 383, 394; Guenthoer's Estate, 235 Pa. 67.

Mr. Justice Frazer, writing the opinion of the Supreme Court in Free's Appeal, 301 Pa. 82, quotes from Guenthoer's Estate at some length, and with approval, as follows:

"If a statute specifically adopts a former statute or particular provisions of a former statute by reference to its title or otherwise, such statute or particular provisions thereof become a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act, but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared or is clearly implied."

We think, therefore, that the legislation we have now under consideration is not a revival, amendment or extension of the said Act of 1874 bringing it within the prohibition of section 6 of article III of the Constitution. It is the mere application of an established mode of procedure or course of official conduct to a new thing or person: McKeown's Petition, 237 Pa. 626, 631.

Sections 3 and 7 of the Act of 1874, and the act supplemental thereto, approved May 4, 1889, P. L. 80, seem to be the only legislation referred to in the Act of 1929. Section 3 provides that:

"Said referee shall proceed, without undue delay, to perform the duties of his appointment, and shall, in all things pertaining to the trial and decision of the case, have the powers and perform the duties that would belong to the court under a like submission. The decision, together with what pertains to it, shall be filed of record in the case, and shall, in like manner and to the same extent, be subject to exceptions and writ of error or appeal, as in cases submitted in like manner to the court; . . ."

Section 7 provides:

"The judgment entered upon the decision of such referee shall be considered a judgment of the court, and thereafter the power of the referee in regard to it shall end, unless by order of the supreme court the case is referred back to said referee."

The supplemental Act of 1889 provides:

"That every referee . . . shall give . . . ten days' previous notice of his intention to file his report, on a day to be fixed by him, during which time the said parties or their attorneys shall have access to said report, and may file exceptions thereto; and it shall be the duty of the referee on exceptions being filed, to re-examine his report and amend the same, if in his opinion such exceptions are well founded. If no exceptions shall be filed with the referee, his award shall be entered as a final judgment of the court, on the day it shall be filed. If exceptions have been filed with the referee, his report and the exceptions, with his action thereon, shall be heard by the court in which they shall have been filed, and said court shall have power to confirm the report of the referee, or alter, amend or reverse it, or send it back to the referee for further proceedings before him; and a writ of error or appeal from the final judgment of the court may be taken by either party, in like manner as in other cases of a similar kind, provided exceptions were duly filed with the referee."

The Act of 1874 has been in force for fifty-six years, and the supplemental Act of 1889 has been in force forty-one years. In referring to said act and its supplement in the Act of 1929, the legislature had in mind the practice that is well known and is understood by the courts and the profession. It is very clear to us, therefore, that mere reference to this act and its supplement of 1889, by its title and date of approval, does not offend against section 6 of article III of the Constitution.

Referring now to the practice under the Act of 1874 and its supplement of 1889, it was decided, in Philadelphia Company v. United Gas Improvement Co., 180 Pa. 235, that:

"To successfully challenge a referee's findings of fact, it is not enough to point to evidence sufficient to support a different finding; but it must be shown that there is no evidence sufficient to sustain his findings, and this is especially so after they have been considered and approved by the court below."

And in Finkelstein v. Spatt, 50 Pa. Superior Ct. 293, it was held:

"The findings of fact of a referee . . . supported by evidence, and approved by the court of common pleas, has, on appeal (which operates only as a writ of error), the conclusiveness of a special verdict of the jury; and particularly is this true when they depend upon oral testimony."

Mr. Justice Frazer, writing the opinion of the Supreme Court in Fidelity-Phila. Trust Co., Exec'r, v. Lehigh Valley Coal Co., 294 Pa. 47, at page 54, commenting on Philadelphia Company v. U. G. I. Co., supra, said, quoting from Hindman's Appeal, 85 Pa. 466, 470:

"When he [the master] reports facts directly proved by the witness, his report is entitled to great weight. But when the fact is simply a deduction from other facts reported by him, his conclusion is the result of reasoning, the correctness of which we are as competent to judge as he."

Applying the above quoted well settled principles of law to the report of the Department of Public Instruction in the instant case, we find the findings of fact to be supported by the great weight of the evidence.

Referring now to the several items of complaint on the part of the complainants, the department does not sustain any of them as stated in the complaint. The department finds, however, that Jordan explained to the Bobbs that he was taking the check so that it might be properly endorsed, as it was made payable to Hoover & Company, and the latter would then mail a check to the complainants the next day; that no check was mailed, and upon inquiry the complainants were told by Jordan that the $1000 would remain in the possession of Hoover & Company until settlement, in accordance with the purchaser's instructions. This finding is supported by the evidence.

The second finding of fact relates to the controversy between the complainants and Jordan with respect to the amount of commission to be charged; and the third finding of fact relates to the transaction at the time an attempt at settlement was made. The department finds that:

". . . At the time of the settlement, Hoover & Company produced a cashier's check from the Integrity Trust Company to the order of Hoover & Company for the $1000 in question, but said check was not endorsed by Hoover & Company or turned over to the trust company; and the evidence shows that it is still in possession of Hoover & Company. The negotiations were then suspended pending the clearing of the title and it appears that, up until the time of the hearing, nothing further had been done in the matter. It also appears from the evidence that Hoover & Company have the said $1000 on deposit in their general business banking account and that it has not, to date, been placed in a special or trustee account."

This finding is supported by the evidence.

In the second conclusion of law the department states:

"There is no evidence here that Jordan 'fraudulently absconded and ran away from the complainants' house,' or 'forcibly seized a check or contract and ran away with same,' as alleged in the sworn statement of complaint. It does not appear anywhere in the testimony that the licensee used force or vio-

lence in his negotiations with the complainants. The sole question which is raised by the complaint for determination by this Department concerns the retention of the $1000 hand money—whether the licensee's conduct in regard to this $1000, under the conditions and circumstances brought out at the hearing, constitutes a violation of section 10 of the act and makes the licensee amenable to discipline by this Department."

With this conclusion of the department we are in accord. In the third conclusion of law the department entered into a discussion of the duty which a broker owes to his principal.

The complaint against Jordan, as set forth in the fourth conclusion of law, is that he did not communicate to the Bobbs prior to obtaining their signatures to the agreement the instructions of Mrs. Bassett that she preferred that the check should remain in the possession of Hoover & Company until the settlement was entirely completed. On the contrary, the testimony indicates that Jordan stated his reason for taking the check was because it was made payable to Hoover & Company, and, therefore, had to be endorsed by the firm; that he promised to mail a check to the Bobbs for the hand money the next day, which he failed to do, and that he did not tell the complainants the purchaser's instructions regarding the hand money until the following day after the agreements were signed by both seller and buyer and their respective legal liabilities had already commenced. The department finds that Jordan purposely failed to tell the complainants the terms accompanying the check for fear the deal would fail, and that the licensee was prompted in the matter by personal and selfish motives to insure the payment of his commission. The department finds that the licensee is to be censured for failing to acquaint the grantors with all the facts when the agreements were being signed and for his promise to mail the check the following day, when it appears he had no such intention. It is the opinion of the department that this conduct of the licensee is such as is contemplated by section 10 and constitutes a violation of said section.

The real estate licensing act specifically provides in section 10 *(a)* that the department may suspend or revoke the license of any salesman or real estate broker that shall be found guilty " (1) of knowingly making any substantial misrepresentation; or (2) of knowingly making any false promise of a character likely to influence, persuade or induce."

We think, therefore, that the department properly found that the complainants were induced to sign the agreements of sale by the misstatement of Jordan that he would return said check for the "down money" the next day. We think, also, that such statement on the part of Jordan was made for the purpose of inducing the complainants to sign the agreements of sale and to permit Jordan to secure the said agreements and check which he took with him. We further think that subsequent events clearly proved and established that Jordan never intended to return said check of $1000 to the complainants and that the making of such promise was of a character likely to influence, persuade or induce, in violation of section 10 of the Act of 1929.

It is true there was conflicting testimony produced at the hearing; however, the representative of the Department of Public Instruction had the witnesses before him, saw and heard their manner of testifying, and, therefore, was the best judge of their credibility. The opinion indicates that the testimony of all the witnesses was carefully considered. In the exercise of its discretion, the department made its findings of fact which are now as conclusive as the verdict of a jury, the testimony referred to being sufficient and

legally competent. We think the department was vested with authority to suspend the licenses of Jordan and Hoover & Company.

It was contended by counsel for the appellants that the department, having failed to find the several allegations in the complaint as stated in the sworn statement to be supported by the evidence, but basing its conclusions of law upon the testimony produced at the hearing showing other misconduct on the part of Jordan, not stated in the sworn statement of complaint by the Bobbs, acted without authority and should be reversed. It is further contended that the department could not act upon such evidence without furnishing to the appellants a sworn statement of the charges they were called upon to meet. Under all the evidence in the case, we think this contention is not sound and cannot be sustained. Section 10 (a) of the act provides the department "may, upon its own motion . . . investigate any action or business transaction of any licensed real estate broker or real estate salesman." Having the complaint of the complainants before us and having read and weighed the evidence, we think the department was justified in finding that the said Jordan knowingly made a false promise of a character likely to influence, persuade and induce. We think the department was not required by the Act of 1929, having the facts and the evidence before it, and the licensees having appeared and made defense, to require a new verified complaint in writing to be made before acting upon the evidence. As we have pointed out, the department may, upon its own motion, proceed to investigate.

The exceptions are dismissed. The findings of fact and conclusions of law are approved, and the report of the department is confirmed.

*Opinion on petition for reargument.*

WICKERSHAM, J., July 29, 1930.—This appeal was argued before the court *in banc* on June 17, 1930. At that time counsel for the appellants did not file briefs of argument upon the law and the facts as required by rule 58 of the rules of this court, which provides:

"Briefs of arguments upon the law and the facts or upon either as counsel may think expedient, must be presented at the time of any argument either at law or in equity which is addressed to the court alone, except when such argument is made in the course of a trial before a jury. No brief will be permitted to be filed after the day of argument except that by special allowance at the time of argument either of the parties may obtain permission to file a reply brief, provided the same is filed within three days."

After argument counsel for appellants applied for permission to file a brief of their argument on the law, which we granted. At that time we were of the opinion that the brief would be filed promptly, and we are still of the opinion that it should have been so filed. We waited until July 7th and then handed down our opinion overruling the appeal. A motion was then presented to the court for leave to file the brief of counsel for the appellants and to reargue the exceptions to the department's findings.

We think the courtesy of the court in granting the opportunity to file a reply brief after the argument was abused in that it was not filed promptly. An examination of this brief discloses that it contains nothing new that is relevant to the issue. It is, to all intents and purposes, a restatement of the oral argument presented to the court.

Counsel for the appellants rely upon a number of authorities which hold that an agent is entitled to hold a deposit to secure his commission and that he is entitled to the commission as soon as he procures a purchaser ready, willing and able to buy for the sum stated. These authorities are not relevant

to the issue the court heard. Whether the appellants were entitled to hold the $1000 "down money" as their commission for making the sale was not involved. The real question was, did the appellant Jordan so inform his clients when he procured their signatures to the contract of sale? Or did he make statements to them to procure their signatures to the contract calculated to deceive? The department held that he did make such statements. In our opinion filed July 7, 1930, we decided the conclusions of the department were sustained by the weight of the evidence.

The appellants' brief concludes with a request for findings of fact. The Act of 1929 makes the department the fact-finding tribunal. The function of the court is to ascertain whether the facts so found are supported by the evidence. As above stated, we have decided that the said findings were so supported.

The prayer of the appellants for leave to reargue the exceptions to the department's findings must be and is, therefore, overruled.

From Homer L. Kreider, Harrisburg, Pa.