## Commonwealth v. Criscuolo et al.

*Prohibition Enforcement Act of March 27, 1923—Scienter.*

1. Under section 3 of the Prohibition Enforcement Act of March 27, 1923, P. L. 34, which provides that "it shall be unlawful for any person to manufacture, sell, possess or deliver within this Commonwealth any intoxicating liquors for beverage purposes," and makes a violation of this section a misdemeanor, it is unnecessary for the Commonwealth, in a prosecution for the unlawful possession of intoxicating liquor, to prove that the defendant knew that the liquors he had were intoxicating, as good faith and ignorance of the facts constituting guilt are no defence to a prosecution for the violation of the act.

2. Evidence of the defendant's character as a peaceable and law-abiding citizen is, therefore, irrelevant.

3. Evidence that prior to the raid and seizure of the liquor, the intoxicating character of which formed the basis of the prosecution, the police had repeatedly, and almost daily, raided the defendant's place, both with and without search warrants, and had confiscated and analyzed liquors found therein and had, in no instance, found intoxicating liquors, is also irrelevant.

4. For the same reason, evidence that in the usual course of the defendant's business he took elaborate precautions by chemists' analyses and the inspection of purchased beer to receive and keep only non-intoxicating beverages is also irrelevant, as the fact that he did not intend to deal in intoxicating liquors and did not know that he was doing so is not material if the liquors actually found in his possession were, in fact, intoxicating under the statute.

5. Where the original indictment contains endorsements showing the results reached in three former trials of the case, a copy without the endorsements may be sent out with the jury instead of the original.

Motion for new trial. Q. S. Phila. Co., April Sess., 1924, No. 34.

*Eugene V. Alessandroni*, Assistant District Attorney, for Commonwealth.
*William A. Gray*, for defendant.

GORDON, JR., J., April 26, 1926.—The defendants, Pasquale Criscuolo and Charles Ganzo, the owner and manager respectively of a café and restaurant at the corner of 12th and Filbert Streets, in the City of Philadelphia, were found guilty of the offence of unlawful possession of intoxicating liquor, and now move for a new trial. Of the thirty-four reasons assigned in support of

the motion, the first four are the usual formal reasons—that the verdict was against the law, the evidence, the weight of the evidence and the charge of the court—and the remaining thirty may be considered for purposes of convenience, according to the questions raised, in seven groups, as follows:

1. Reasons Nos. 5 to 11, 13, 14, 16 to 23, 28 and 29, all of which relate to rulings on evidence, offers of proof and the charge of the court; and raise the question of the relevancy and materiality to a charge of unlawful possession of intoxicating liquor of a defendant's intent to possess intoxicating liquor, and his knowledge of its intoxicating character. 2. Reason No. 24, which raises the question of the admissibility in such a prosecution of evidence of the reputation of the defendant generally as a peaceable, law-abiding citizen. 3. Reason No. 12, which relates to the relevancy and admissibility of testimony offered by the defendants as to the amount of money invested by them in the café and restaurant business in connection with the management of which the intoxicating liquor is alleged to have been possessed. 4. Reasons Nos. 15 and 9 relating to the rejection of evidence of the conduct of the police in connection with the raid and seizure of the beer found in the defendant's possession, and of police activities towards third persons who, previous to the raid, had attempted to deliver beer to the defendants. 5. Reasons Nos. 25, 26 and 27, touching upon the action of the court in refusing to withdraw a juror for alleged improper remarks of the District Attorney. 6. Reasons Nos. 30 to 33, relating to alleged error in various parts of the charge of the court; and 7. Reason No. 34, relating to the action of the court in sending out with the jury a copy of the bill of indictment, rather than the original bill.

Before discussing the reasons assigned for a new trial under the subjects indicated, we may consider briefly the issue raised at the trial. On Feb. 9, 1924, the police raided the café and restaurant of the defendants under a search warrant, and seized large quantities of beer in barrels in the cellar, in bottles on ice under the bar, and in glasses on the bar. In conducting the raid they first ejected from the premises all patrons and other persons having no authority in connection with the business. Samples of the beer seized were then taken and delivered to the city chemist for analysis. The defendants did not deny, and indeed admitted, that they had beer in their possession, which was seized by the police, and the only controlling question of fact for the determination of the jury was the alcoholic content of the beer seized.

With this statement of the issue tried, we come to a consideration of the first group of reasons advanced for a new trial. The defendants endeavored in various ways to show that, for some time prior to the raid and seizure of the beer, the police had repeatedly, and almost daily, raided their place, both with and without search warrants, had confiscated and analyzed liquors found therein, and had in no instance found intoxicating liquors in their possession. The attempt to prove these facts was made by questions addressed to the Commonwealth's witnesses on cross-examination, to their own witnesses on direct examination, and by offers of proof; and the action of the court in rejecting the evidence so offered is the subject of most of the reasons embraced in the group under consideration. A reference to one of the offers of proof, which covers substantially all the facts offered in this connection, will suffice to indicate the questions of law raised in all the reasons:

"Mr. Gray: In view of your Honor sustaining the Commonwealth's objections, and the discussion we had as to your Honor's views on my examination along this line, I would like to cross-examine this witness, in order that

Commonwealth v. Criscuolo et al.

we might establish the fact, that during three days in January, 1924, to wit, Jan. 9, 10 and 11, 1924, the police of the City of Philadelphia, acting under Captain Le Strange, raided this place nine times, the first of which occurrences was with a search warrant, and all other occasions were without a search warrant or any authority whatsoever; that they never on any of these occasions found on the premises any liquid or beverage of any kind containing more than one-half of 1 per cent. alcohol by volume; that they took away from the place on each occasion all liquid beverages they found, on a number of occasions without any warrant or authority of any kind whatsoever, taking mineral water, White Rock, ginger ale, and everything else along the line of liquids that they designated as beverages, which in all cases were found not to contain more than one-half of 1 per cent. of alcohol by volume; this I am asking, of course, in perfectly good faith, which I may establish by the witness himself, that none of that beverage contained more than one-half of 1 per cent. alcohol by volume.

"Mr. Alessandroni: Objected to.

"The Court: Objection sustained. Exception for defendant."

In addition, the defendant sought to show that, in the usual and regular course of their business, they took elaborate precautions, by chemists' analyses and the inspection of purchased beer, to receive and keep only non-intoxicating beverages, for the purpose of contending that they did not intend to deal in the prohibited commodity, and they did not know they were doing so.

All the reasons advanced for a new trial under this group raise the same fundamental question: the admissibility in a prosecution for the unlawful possession of intoxicating liquor of evidence which goes to the existence of a scienter—a criminal intent and guilty knowledge of the facts constituting the crime. If these are not necessary elements of the offence, evidence showing their presence or absence is clearly immaterial, and should be rejected.

Section 3 of the Act of March 27, 1923, P. L. 34, under which this prosecution is brought, provides that "It shall be unlawful for any person to manufacture, sell, . . . possess or deliver within . . . this Commonwealth any intoxicating liquor for beverage purposes, . . ." and its violation is made a misdemeanor. Nothing in this section restricts the operation of the act to cases in which guilty knowledge and intent are present. Indeed, in misdemeanors of this character, the great weight of abundant judicial precedent, not only in this jurisdiction, but generally, holds that guilty knowledge and intent are not essentials for a conviction of such an offence, and that good faith and ignorance of the facts constituting guilt are no defences to a violation of such laws. No case in Pennsylvania directly deciding this question under the Act of 1923 has been called to our attention, but the decisions generally upon this subject, though few, are clear, and this view was substantially held in Com. v. Zelt, 138 Pa. 615; Com. v. Terry, 15 Pa. Superior Ct. 608, and In re Carlson's License, 127 Pa. 330; Com. v. Weiss, 139 Pa. 247. In the last cited case, which was a prosecution under section 3 of the Act of May 21, 1885, P. L. 22, regulating the sale, manufacture and possession of oleomargarine, Mr. Justice Clark said:

"Guilty knowledge or guilty intent is, in general, an essential element in crimes at the common law, but statutes providing police regulations in many cases make certain acts penal where this element is wholly disregarded. The distinction is thus laid down in 3 Greenl. Ev., § 21: 'The rule (i. e., that ignorance of fact will excuse) would seem to hold good in all cases where the act, if done knowingly, would be malum in se. But where a statute commands

that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the crew, the owners and officers being alike innocently ignorant of the fact, yet the forfeiture is incurred notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police and other laws and regulations, for the mere violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted; for the law in these cases seems to bind the parties to know the facts and to obey the law at their peril.' To the same effect, also, is Wharton, Crim. Law, § 83, page 2442.

"Whether a criminal intent, or a guilty knowledge, is a necessary ingredient of a statutory offence, therefore, is a matter of construction. It is for the legislature to determine whether the public injury, threatened in any particular matter, is such and so great as to justify an absolute and indiscriminate prohibition. Even if, in the honest prosecution of any particular trade or business, conducted for the manufacture of articles of food, the product is healthful and nutritious, yet, if the opportunities for fraud and adulteration are such as threaten the public health, it is undoubtedly in the power of the legislature either to punish those who knowingly traffic in the fraudulent article or, by a sweeping provision to that effect, to prohibit the manufacture and sale altogether. The question for us to decide, therefore, is whether or not, from the language of the statute, and in view of the manifest purpose and design of the same, the legislature intended that the legality or illegality of the sale should depend upon the ignorance or knowledge of the party charged.

"The statute in question was an exercise of the police power, and the act was sustained upon this ground, not only in this court, but also in the Supreme Court of the United States: Powell v. Com., 114 Pa. 265; Powell v. Pennsylvania, 127 U. S. 678. The prohibition is absolute and general; it could not be expressed in terms more explicit and comprehensive. The statutory definition of the offence embraces no word implying that the forbidden act shall be done knowingly or wilfully, and, if it did, the design and purpose of the act would be practically defeated. The intention of the legislature is plain, that persons engaged in the traffic shall engage in it at their peril, and that they cannot set up their ignorance of the nature and qualities of the commodities they sell as a defence."

The authorities outside of Pennsylvania are almost universally in accord with this view, and it will be sufficient to quote briefly from a few of the decisions of foreign jurisdictions in order to show the uniformity of the authorities and the trend of judicial reasoning upon this subject.

Com. v. Daly, 148 Mass. 428: "It has been repeatedly held that if a man sells or keeps for sale intoxicating liquor, it is no defence that he does not know it to be intoxicating, or that he supposed it to be something else."

Com. v. O'Kean, 152 Mass. 584: "The fact that the defendant did not know that the beer was an intoxicating liquor, within the definition of the statute, would not prevent the place used for its illegal sale from being a nuisance nor relieve the defendant from the penalty prescribed for keeping such nuisance. If the defendant kept the place and used it for the sale of intoxicating beer, the facts that he did not know that the beer contained such a proportion of alcohol as rendered its sale illegal and that he believed that it was not intoxicating were immaterial and would not constitute a defence."

Com. v. Goodman, 97 Mass. 117: "The statute prohibits absolutely the keeping of such liquors with an intent to sell them. The intent applies solely to the purpose for which they are kept, and not at all to the nature or quality of the article. This a person is bound to know or ascertain at his peril. Whether he knows it or not, he commits the offence by keeping an article which is in fact intoxicating, with an intent to sell it. The argument urged in behalf of the defendant is founded on the mistake that the guilty intent necessary to constitute the offence which the law prohibits must include a knowledge of the quality of the article as well as a purpose to sell it. Such a construction of the statute would contravene its whole scope and object."

People v. Ingraham, 100 Mich. 580: "It is not a question of intent. It is unlawful to carry on the business of selling intoxicating liquors, or to sell intoxicating liquors, within that county." (Note) : The court had refused to charge as follows: "If you find that the defendant purchased the drink called 'ginger ale' in good faith, believing it was non-alcoholic and non-intoxicating, and sold it in good faith as such, then you must acquit."

State v. Hughes, 16 R. I. 403: "If a person deals in liquors of that character, he is bound to know their kind and quality. Otherwise, laws like this would have very little force."

State v. Tomasi, 67 Vt. 312: "The rule in most instances seems to be this: If, to constitute an offence, knowledge of certain facts is essential, it must invariably be shown that the respondent has such knowledge; but if a statute makes an act penal without reference to knowledge, it is then unnecessary to show it, and ignorance of the fact is no defence."

Williams v. The State, Tex. Crim. Cases, 477: "The sale of intoxicating liquor in a local option district, except upon prescription or for sacramental purposes, is a violation of the law, regardless of the intent or purpose for which it was sold, and the intent of defendant is irrelevant and immaterial."

Com. v. Green, 163 Mass. 103: "Guilty knowledge that one is acting in violation of law is not essential to the offence of selling intoxicating liquors."

See, also, Peters v. District Court of Jefferson County, 114 Iowa, 207; Compton v. The State, 95 Ala. 25; Kansas v. Moulton, 52 Kans. 69; State v. Downs, 116 N. C. 1064; Com. v. Savery, 145 Mass. 212; Com. v. Hallett, 103 Mass. 452.

A careful inspection of the few decisions which apparently hold to the contrary will probably show that they turn upon an interpretation of the language of a statute under which the offence was expressly declared to consist in the possessing or selling of the prohibited article "knowingly" or "intentionally," or in which some such limiting phraseology was employed. It is thus seen that the great weight of judicial authority supports the position that guilty knowledge and criminal intent are not elements of offences such as that now under consideration.

Bearing this fundamental principle in mind, it is evident that the facts which the defendants sought to prove in the case under consideration were immaterial to the issue, and were, therefore, properly excluded. That the police seized beer in the defendants' possession was admitted, and the only possible dispute related to its alcoholic content. In such an issue, the defendants' good faith, the precautions they took to obey the law and the fact that previous seizures and analyses failed to disclose wrongdoing had no probative value whatsoever. To have admitted such evidence would have tended only to mislead and divert the jury's attention from the real issue in the case, and would have invited a decision on an improper ground.

Commonwealth *v.* Criscuolo et al.

The defendants urge, however, that the evidence of the previous raids and the conduct of the police was admissible on the ground that it went to the credibility of the Commonwealth's witnesses, who conducted the seizure, because it indicated the possibility that they were acting from motives of oppression and vindictiveness. This contention is, in our opinion, without merit. In the first place, the offers of proof were made for the purpose of showing the defendants' good faith and honest ignorance of the alcoholic content of the beer, and, were we inclined to confine our decision to the technical form of the offers, we would hold their rejection proper. And, in the second place, the evidence, standing, as it does, alone in this regard, does not fairly lend itself to such a contention. Constant vigilance and energetic activity on the part of the law-enforcing arm of the Government are but the proper performance of duty, and, especially when followed by an exoneration of the suspect, they indicate qualities of fidelity and reliability at least as strongly as they suggest so-called "police persecution" and a want of credibility. To permit such inadequate evidence to be used for the latter purpose would be to pervert the processes of logic to the defeat of truth. In addition, the attempt to discredit the witnesses was unnecessary and of harmful tendency. The defendants themselves substantially corroborated the testimony of the Commonwealth's witnesses by admitting the important facts respecting the seizure of the beer, and thus narrowed the issue to the single question of its alcoholic content. Upon that issue, the insinuation of "police persecution" was of no importance whatever, and its only value would have been to confuse the issue and to invite a verdict based upon prejudice, suspicion and conjecture. Indeed, even if it be assumed that collateral evidence of this kind could be considered admissible for the indirect purpose of impeaching credibility, it would not follow that it was error to reject it. The admission of evidence of this nature is within the sound discretion of the court, and it may properly be excluded where, as here, it would be productive of more harm than good. Primarily, the evidence went to the existence of guilty knowledge and criminal intent, as already pointed out, and it would have been impossible effectively to have limited the purpose of its admission to that of impeaching the credibility of the witnesses. We see no merit, therefore, in the reasons for a new trial embraced in the group now under consideration.

The decision of the second of the group of reasons for a new trial is dependent largely upon the considerations discussed in the first. The defendants offered to prove their good reputation as peaceable, law-abiding citizens, and this offer was rejected by the trial judge. This raises the question of the relevancy and admissibilitny of evidence of good reputation in issues in which guilty knowledge and criminal intent are not involved, and requires an analysis of the probative value of evidence of this kind. It is true that evidence of good character has often been said to go generally to guilt, and to be substantive evidence, which might, in itself, be sufficient to raise a reasonable doubt of guilt. This does not mean, however, that such evidence is a mere makeweight, or may be supplied to a jury for the purpose of inducing an unreasoned decision, the product of considerations of mercy or of generous caprice. Irrelevant evidence which has this tendency is mischievous and should be rigorously excluded. In most criminal trials the offences charged require proof of a scienter. There, good reputation may give rise logically to a reasonable doubt of criminal intent. Where, however, as in the present case, the issue is restricted to a question of fact, the existence of which is in no way dependent upon the act or intention of the defendants, evidence of their good reputation is clearly irrelevant. In what possible way

Commonwealth v. Criscuolo et al.

can the defendants' reputation as peaceable, law-abiding citizens aid in determining the alcoholic content of beer which they admit they possessed? Clearly it is worthless for such a purpose.

The defendants, however, stress the contention that such evidence has a bearing upon credibility as well as guilt, and that, therefore, it should have been admitted, since the identity between the beer seized and that analyzed rested upon the testimony of the Commonwealth's witnesses that it was delivered by them to the chemist. This contention, however, will scarcely bear analysis. The credibility of the Commonwealth's witnesses could not be affected by the good reputation of the defendants, and, whatever may have been the contradictions of opposing witnesses, it cannot reasonably be contended that the reputation of the defendants for peace and order either corroborated them or weakened the credibility of their opponents. A witness' veracity is not buttressed by proof that he is a peaceable, law-abiding citizen, nor is his opponent's thereby destroyed. Such evidence is admissible only in cases in which the trait of character disclosed by it would have logical weight in determining the truth or falsity of the fact in issue. It follows, therefore, that the reputation evidence offered by the defendants was properly excluded.

The third group of reasons advanced for a new trial requires little discussion. The defendants attempted to prove the amount of money they had invested in their business. This fact was obviously immaterial and the Commonwealth's objection to it was properly sustained.

The fourth group of reasons advanced for a new trial relates to the rejection by the court of evidence touching upon the conduct of the police in connection with the raid and seizure of the beer found on defendants' premises, and their activities in driving away and threatening third persons not connected with the defendants, who, previous to the raid, had attempted to deliver beer to the premises. The rejection of this evidence was justified upon grounds similar to those heretofore discussed in the first and second group of reasons for a new trial, and we, therefore, see no error in the court's action in rejecting the evidence.

The fifth and sixth groups of reasons advanced for a new trial relate to the refusal of the court to withdraw a juror on the ground of alleged improper remarks by the district attorney in his closing argument, and to alleged error in various parts of the charge. We have carefully considered the reasons advanced and are of opinion that they are without merit.

The seventh group of reasons advanced for a new trial relates to the action of the court in sending out with the jury a copy of the bill of indictment rather than the original bill. The paper sent out was the district attorney's official copy of the bill, and was an exact copy of the original bill, except that it did not contain endorsements, which appeared on the original, showing the results of three former trials of the case. It is the practice in this county to endorse on the outside of the bill of indictment the results of all trials thereof. This practice is unfortunate, for it gives to a subsequent jury information respecting former trials, which cannot properly be disclosed to it. The only course which was open to prevent this was to furnish for the jury's use a correct copy of the bill. In doing so, the defendants were not prejudiced or harmed in any way, unless, indeed, they were deprived of the advantage which a disclosure to the jury of the outcome of the previous trials might have given them, and to this they were no more entitled than the Commonwealth would have been, had the endorsements tended to aid it. We see no error in sending out a copy of the original bill with the objectionable matter eliminated.

With respect to the first four reasons assigned for a new trial, that the verdict was against the law, the evidence, the weight of the evidence and the charge of the court, we are satisfied that it was neither against the law, nor the charge of the court, and that the weight of the evidence overwhelmingly supports it. We have no doubt of the correctness and justice of the verdict, and see no reason for disturbing it.

The motion for a new trial is, therefore, overruled.