## IN RE LICENSE TO C. M. CARLSON.
## IN RE LICENSE TO A. J. TUTTLE.

CERTIORARIS TO THE COURT OF QUARTER SESSIONS OF ERIE COUNTY.

Argued May 11, 1889—Decided June 28, 1889.

[To be reported.]

. Upon a writ of certiorari to the order of the Court of Quarter Sessions revoking a license to sell liquors, under § 7, act of May 13, 1887, P. L.

110, neither the testimony nor the opinion of the court below form any part of the record which may be considered.

2. The agreement of counsel that the testimony may be omitted from the paper book, and that the finding of facts as contained in the opinion of the court below should be considered in lieu thereof by the Supreme Court, is nugatory.

3. In such proceeding, the provision of the section is mandatory, and it will be presumed that the court below had sufficient evidence before it to show that the licensee had violated some law of the commonwealth in regard to the sale of liquor.

4. On a proceeding to revoke a license to sell liquors under said section, on the ground that the licensee sold liquors to minors, it is no sufficient excuse or justification that he sold to them in good faith, informed and believing that they were of full age.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and MITCHELL, JJ.

Nos. 200, 201 July Term 1888, Sup. Ct.; court below, Nos. 36, 37 May Term 1888, Q. S.

At May Term 1888, of the Court of Quarter Sessions of Erie county, Louis Marz and George Gehrlein were convicted of burglary. During their trial they set up the defence that they were intoxicated at the time the crime was committed, and testified that they were minors, and that one of them, Marz, got beer at A. J. Tuttle's saloon, and both drank at Carlson's. Carlson and Tuttle had each been granted a license to sell liquors at retail under the act of May 13, 1887, P. L. 108. The court at once, May 26, 1888, entered a rule upon both Carlson and Tuttle to show cause why their respective licenses should not be revoked, returnable May 29, 1888.

On June 26, 1888, the court, GUNNISON, P. J., filed the following opinion:

### CARLSON'S LICENSE.

The act of May 13, 1887, § 7, P. L. 110, provides that " upon sufficient cause being shown, or proof being made to the said court, that the party holding a license has violated any law of this commonwealth relating to the sale of liquors, the Court of Quarter Sessions shall, upon notice being given to the person so licensed, revoke the said license."

Upon the trial of Commonwealth v. Marz and Gehrlein at the May Sessions of the court, it appearing from the testimony

that C. M. Carlson, the respondent in this rule, had sold beer to minors, this rule was entered, notice given him, and a hearing had at which the testimony of witnesses for and against the rule was heard. If that testimony showed a violation of the law on the part of the respondent, the portion of the section quoted makes it mandatory upon the court to make this rule absolute.

The respondent was sworn, and admitted in his testimony, that he sold beer to the two minors in question. His excuse was that their appearance indicated that they were of full age; and that as a precaution before selling he asked their age, and each responded that he was of full age; that he sold to them in good faith, fully believing them to be of full age.

It may be conceded that the weight of the evidence is to the effect that he was ignorant of the fact that the boys were minors, and that he did not wilfully violate the law; and, if ignorance of fact, or the absence of intention to violate the law, will avail as an excuse, the rule should be discharged.

By § 17, of the act of 1887, it is enacted, " That it shall not be lawful for any person, with or without license, to furnish by sale, gift or otherwise " " any spirituous, vinous, malt or brewed liquors " " at any time to a minor," etc. Under a literal reading of the section, there was undoubtedly a violation in this case. The act of selling, irrespective of intention, constitutes an offence under a strict construction of the language used by the legislature.

Ignorance of fact is, in many cases, admitted as an excuse, as showing the absence of a criminal intention. In other cases, the rule is different. The distinction is thus laid down by Greenleaf: " The rule " (i. e., that ignorance of fact will excuse), " would seem to hold good, in all cases where the act, if done knowingly, would be malum in se. But where a statute commands that an act be done or omitted, which in the absence of such statute might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation. Thus, for example, where the law enacts the forfeiture of a ship having smuggled goods on board, and such goods are secreted on board by some of the crew, the owners and officers being alike innocently ignorant of the fact, yet the forfeiture

is incurred, notwithstanding their ignorance. Such is also the case in regard to many other fiscal, police, and other laws and regulations, for the mere violation of which, irrespective of the motives or knowledge of the party, certain penalties are enacted; for the law, in these cases, seems to bind the party to know the facts, and to obey the law, at his peril:" 3 Greenl. Ev., § 21. Measured by this standard, it would seem that ignorance as to the age of the persons to whom the liquor was sold, was no excuse. The law is of the class recited by Professor Greenleaf, in which such a rule obtains.

That the legislature intended the mere fact of selling to a minor to constitute the offence, irrespective of intention or good faith, is, I think, apparent upon a review of its legislation upon this subject. The act of May 8, 1854, § 1, P. L. 663, enacted " that wilfully furnishing intoxicating drinks by sale, gift or otherwise " " to a minor" " shall be held and deemed a misdemeanor," etc. By the second section of the act of April 17, 1867, P. L. 89, it was enacted that "no person shall sell, give away, or dispose of any strong or spirituous liquors, wines, ale, beer, or any intoxicating drinks to" "any person under twenty-one years of age " without the consent of parent or guardian, etc. By the eleventh section of the act of April 12, 1875, P. L. 42, it was enacted " that it shall not be lawful for any person, with or without license, to sell," etc., " at any time to a minor." And lastly, by § 17 of the act of May 13, 1887, P. L. 113, it was enacted "that it shall not be lawful for any person, with or without license, to furnish by sale, gift or otherwise" "any spirituous, vinous, malt or brewed liquors" "at any time to a minor."

It will be seen that by the act of 1854, a necessary element to constitute the offence, was that the sale should be wilful. By each of the succeeding acts cited, the sale is made unlawful, the word " wilfully " being omitted, and no other word of similar import being used. This change must have been intentional. Whether or not the act of 1854 was, upon experience, found to permit too easy an opportunity for evading the law, it is not necessary to inquire. The succeeding legislation effected a change, by which the question of good faith and criminal intention became unimportant in determining the question as to whether or not there had been a violation of the

law. Sales to minors whether wilfully or ignorantly are equally prohibited. It follows that, the law having been violated, it becomes the clear duty of the court to revoke the license in this case.

The rule to show cause is made absolute. [Exception.]

## TUTTLE'S LICENSE.

The facts in this case are similar to those in the rule to show cause why the license of C. M. Carlson should not be revoked. For the reasons given in the opinion filed in that case, the rule to show cause in this case is made absolute. [Exception.]

Thereupon the respondents severally took these writs assigning the orders of the court making the rules absolute as error.

On March 27, 1889, it was agreed by counsel in writing that, " As no notes of testimony were taken at the hearings of the above cases except the notes taken by the court; and as the facts proven are clearly set forth and stated in the opinion of the court filed in the case of C. M. Carlson, No. 36 May Sessions 1888, it is agreed that said notes of the testimony taken by the court may be omitted from the paper books of appellant, using instead the findings of facts as stated in said opinion of the court."

*Mr. J. Ross Thompson* and *Mr. E. P. Gould*, for the plaintiffs in error.

*Mr. A. E. Sisson*, District Attorney, for the commonwealth.

OPINION, MR. CHIEF JUSTICE PAXSON :

We are asked to review the action of the Court of Quarter Sessions in each of the above cases, in revoking the license of the plaintiffs in error to sell liquor. The records have been brought here upon writs of certiorari, and we can only review what appears upon their face. The seventh section of the act of May 13, 1887, P. L. 110, provides that ".upon sufficient cause being shown, or proof being made to the said court, that the party holding a license has violated any law of this commonwealth relating to the sale of liquors, the Court of Quarter Sessions shall, upon notice being given to the person so

licensed, revoke the said license." This provision is mandatory, and upon this writ we must presume the court below had sufficient evidence before it to show that each of the plaintiffs in error had violated some law of this commonwealth in regard to the sale of liquor. What particular law had been violated the record does not show, as neither the testimony nor the opinion of the court form any part of it. The agreement of counsel of March 27, 1889, that the testimony may be omitted from the paper book, and that the findings of fact as contained in the opinion of the court should be considered in lieu thereof, is nugatory, as we would have no right to consider the testimony if printed.

If we look into the opinion of the court for the facts, however, we find nothing to help the plaintiffs. From it we learn that the offence of which the plaintiffs in error were guilty, was that of selling liquor to minors, and that the only excuse offered was that they did not know the persons to whom they sold were minors. This ignorance is not a sufficient excuse or justification under the act of assembly. If such a defence could be successfully interposed in such cases, there would be few convictions, and the law would be nullified for all practical purposes. Speaking for myself, I regret that the act of assembly does not make it a criminal offence for a minor to obtain liquor from a licensed dealer upon the pretence that he is of full age.* As the law now stands it is an offence to sell a person a glass of liquor the day before he is twenty-one years of age; yet it is often difficult for a saloon keeper to know the age of the person who may call for a drink. Some persons are as mature in appearance at twenty, as others are at twenty-two. While I would rigidly enforce the license laws, yet the dealer who pays for his license and sells by authority of law is entitled to some consideration. I would hold him to a strict compliance with the law; at the same time I would protect him in so far as he honestly attempts to comply with it, and would punish the individual who, by a falsehood, induces him to violate it.

We see no sufficient reason to disturb the action of the court below.

The proceedings are affirmed in each case.

---

* See act of May 10, 1881, P. L. 12.