## Manning, Appellant, *v.* Yokas.

Argued April 16, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Francis L. Zarrilli,* for appellants.

*Joseph W. deFuria,* with him *Thomas A. Curran, deFuria, Larkin & deFuria* and *Chadwick, Curran, Petrikin & Smithers,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 29, 1957:
On May 20, 1950, at about 11:45 p.m., Dan Manning and his wife, Jean H. Manning, were driving westwardly on Chester Pike, a 6-lane highway, in Delaware County when Stanley Kordowski, 16 years of age, was heading eastwardly on the same thoroughfare. At a point in the borough of Norwood, the minor Kordowski

left his side of the road, crossed over the center line and crashed head-on into the Manning automobile then in the center lane of westbound traffic, demolishing the Manning car and inflicting injury on its occupants.

Prior to the accident Kordowski had been drinking —at the Banshee Hotel in Ridley Park—intoxicating beverages to such an extent that when he departed from the hotel he left sobriety behind. While thus under the influence of alcohol he got into his automobile and drove out into the highway. He had travelled only 8 or 9 blocks when he encountered and smashed the Manning car.

In bringing their damage suit against Kordowski the plaintiffs joined Dominic Yokas, proprietor of the Banshee Hotel, charging him equally with Kordowski for the negligence which caused the losses of which they complained. The joinder of Yokas in the action was predicated on the Act of May 8, 1854, P. L. 663, which provides, inter alia: "Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in General Assembly met, and it is hereby enacted by the authority of the same, That wilfully furnishing intoxicating drinks by sale, gift or otherwise to any person of known intemperate habits, *to a minor*, or to an insane person for use as a beverage shall be held and deemed a misdemeanor. . . . (Section 1).

"That any person furnishing intoxicating drinks to any other person in violation of any existing law, or of the provisions of this act shall be held civilly responsible for any injury to person or property in consequence of such furnishing, and any one aggrieved may recover full damages against such person so furnishing by action on the case, . . ." (Section 3). (Emphasis supplied).

The jury returned verdicts in favor of both plaintiffs against both defendants. Yokas moved for judg-

ment n.o.v. on the ground that he was improperly joined in the action, asserting that he was an entire stranger to the mishap which befell the Mannings. The lower Court granted his motion and the plaintiffs appealed.

The learned Court below found difficulty in interpreting that part of the statute which holds that a person furnishing intoxicating drinks to a minor "shall be held civilly responsible for any injury to person or property in consequence of such furnishing." The Trial Court agreed that Yokas' violation of the Act in itself constituted negligence: "We think Yokas' negligence persisted throughout as an operative factor in the accident. The jury was justified, in our opinion, in finding that the negligent acts of both defendants were contributing causes and proximate factors in the happening of the accident, which ordinarily, would impose liability upon both of them." But then the Court said: "One furnishing intoxicating drinks to another in violation of law is responsible for any injury 'in consequence of such furnishing.' Where, as here, the injury is in consequence of his act in conjunction with the act of another, there would appear to be no remedy under the statute."

Here the Court's logic unfortunately crossed the center of the highway of strict reasoning and collided with the plain wording of the statute. "In consequence of such furnishing" in no way implies that the resulting injury must pour from the same bottle which filled the glass which intoxicated the minor. Under the lower Court's interpretation, only the intoxicated minor himself could recover for injuries in the event he suffered some mishap as, for instance, if he fell at the bar while taking his last drink. But the Act specifies that the innkeeper shall be held civilly liable for "any injury to person or property." Obviously, "property"

140

would have to be something more than the person of the drinker. The statute says further: *"Any one* aggrieved may recover full damages against such person so furnishing."* (Emphasis supplied.) Thus if the chain of causation begins with the furnishing of the liquor and continues unbroken to the mishap, the furnisher of the liquor is responsible, no matter who is injured.

If a drunken minor staggered from a saloon and fell over a child, it could not be argued that his fall was not the consequence of the furnishing of the liquor. So far as liability is concerned, there can be no difference between an injury caused through one's falling body and an injury inflicted by one's automobile under his management and control. If an innkeeper plied a minor with whiskey to a degree that the minor became offensively aggressive and, while under the influence of the liquor, injured another with a knife, it could not be doubted that the innkeeper, under the Act of 1854, would be liable for those injuries. An automobile when handled recklessly by its driver can be a weapon no less damaging and no less fatal than a knife. That the negligent operation of the automobile by Kordowski caused the accident is unquestioned in this appeal. But Kordowski's negligence was the result of his imbibing intoxicating liquor supplied by Yokas. Yokas thus, under the Act, became as much responsible for the accident as if he had stripped the gears of the car or had damaged the steering wheel, which defects in the operation of the car were directly responsible for the uncontrollability which caused the collision.

The lower Court saw in the case of *Fink v. Garman,* 40 Pa. 95, decided in 1861, an authorization and direction for entering judgment n.o.v. The case, in point of reality, is authority to the contrary. There, Jacob Fink, an innkeeper, served Jacob Garman, a man generally known for his intemperate habits and at the time

already drunk, with an additional quantity of intoxicating liquor. Garman thereby became so inebriated that when he mounted his horse he fell to the ground and was killed beneath the wheels of a wagon. His widow brought suit against the innkeeper under the Act of 1854 and recovered a verdict. The innkeeper appealed. This Court affirmed the judgment, saying: "No standard of social duty, or of obedience to law, can be applied to Fink's act which will not prove it to have been in a very eminent sense unlawful negligence. . . .

"Counsel suggest that the only civil action to which the statutes subject the offender is such as may be brought by a party whom the inebriate injures. Not so. The argument loses sight of the large and comprehensive terms of the statutes. 'Any person aggrieved' may sue, says the Act of 1854, and 'for any injury causing death' the widow has her action by the Act of 1855. . . .

"If, therefore, Garman was precipitated from his horse under the wheels of his wagon by reason of Fink's deliberate wrongdoing (and of this the jury must have been satisfied before they could find for the plaintiff), the turpitude of Fink's act is not to be abated, but rather increased by such concurrence as he obtained from the inebriate."

Whatever additional language in the opinion in that case which might seem to support the action of the lower Court in this case must be regarded as obiter dicta and not controlling.

Judgment n.o.v. reversed.