## McKinney, Appellant, *v.* Foster.

Argued October 2, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*Willis A. MacDonald,* for appellant.

*John L. Wilson,* for Paul J. Besnecker, appellee.

OPINION BY MR. JUSTICE CHIDSEY, January 8, 1958:
This trespass action was brought by the administrator of the Estate of Charles C. McKinney, III against James W. Foster, the 19 year old operator of an automobile that crossed over the opposite lane of a highway striking and fatally injuring McKinney who was walking along the berm, and against Paul J. Besnecker, the proprietor of a restaurant at which Foster had been served beer on the evening of the accident. The jury made a special finding that Foster was under the influence of intoxicants at the time of the accident, and brought in verdicts amounting to $6,000 against both defendants.

Both defendants moved for a new trial, and the defendant Besnecker also moved for judgment n.o.v. The trial court granted the judgment n.o.v. as to the defendant Besnecker, refused the motions for new trial, and entered judgment in favor of the defendant Besnecker, and in favor of the plaintiff against the defendant Foster. The plaintiff brings this appeal from the entry of judgment n.o.v. in favor of Besnecker. The defendant Foster has not appealed.

224

The action against Besnecker was founded on the Act of May 8, 1854, P. L. 663[1] which provided: "Section 3. That any person furnishing intoxicating drinks to any other person in violation of any existing law, or of the provisions of this acts, [sic] shall be held civilly responsible for any injury to person or property in consequence of such furnishing, and any one aggrieved may recover full damages against such person so furnishing by action on the case, instituted in any court having jurisdiction of such form of action in this Commonwealth." At the time of the accident it was, of course, illegal to sell intoxicants to a minor or to any person visibly intoxicated.[2]

The action, filed in 1950, came on for trial in May, 1955 and the verdicts rendered on May 26, 1955. The opinion and order of the court below granting the judgment n.o.v. were filed on June 8, 1956, and although certiorari issued on September 12, 1956, this appeal was not heard until October 2, 1957.

We recite these dates to show that the judgment n.o.v. was entered, and this appeal taken, a year before our latest pronouncement on the Act of 1854 in the case of *Manning v. Yokas*, 389 Pa. 136, 132 A. 2d 198, handed down on May 29, 1957.

*Manning v. Yokas* was significant because, while many cases arising under the Act of 1854 had been heard by this Court during the past hundred years, *Manning v. Yokas* was the first to apply the Act to a situation where an accident occurred and the negligent driver of an automobile involved had been served intoxicants by the defendant sought to be held liable.

---

[1] The sections here involved were repealed by the Act of April 12, 1951, P. L. 90.

[2] Acts of May 3, 1933, P. L. 252, Section 23(b), and November 29, 1933, P. L. 15, Section 602(e), as amended.

In that case, like this, a minor had been served intoxicants at the defendant Yokas' hotel and afterward, while driving away from the hotel, the minor negligently drove across the center line into the opposite lane of a highway, crashing into the plaintiffs' car. The court below similarly granted judgment n.o.v. as to the hotel proprietor, and on appeal we reversed. The tenor of our opinion made clear that an accident which occurred following the furnishing of intoxicants to the negligent driver, could properly be found by a jury to have resulted "in consequence of such furnishing", and that the responsible tavern keeper could be held civilly liable under the Act of 1854. Clearly implicit in that opinion is the common knowledge that great numbers of persons, minors as well as adults, drive automobiles (too many of them, unfortunately, while intoxicated), and that it was well within the realm of foreseeability that one illegally served with intoxicants might negligently drive an automobile and cause injury to persons or property.

Without the benefit of the *Manning v. Yokas* opinion, the trial court in the instant case opined: "The injury must be the natural and probable consequence of the negligence—such a consequence as under the surrounding circumstances in the case might or ought to have been foreseen by the wrongdoer as likely to follow through his act: . . . There is no evidence whatsoever that Foster showed any signs of intoxication while in the Besnecker Restaurant. There is not the slightest evidence that Besnecker knew that Foster owned an automobile, or had a motor vehicle which he would be likely to drive. After careful consideration of all of the evidence we are of the opinion that it could not be reasonably anticipated or foreseen when the sale of the beer took place that Foster would become intoxicated, drive an automobile, and become

involved in a fatal accident more than an hour later and six miles away from the premises. To hold otherwise would, in effect, make the restaurant keeper an insurer against all accidents which might happen subsequent to the sale of the intoxicating beverage. It, therefore, appears that the accident is too remote from the alleged illegal act to cause civil responsibility to arise."

It is clear from the above portion of the trial court's opinion, that the reasons for which it granted judgment n.o.v. were reasons which we found insufficient in *Manning v. Yokas*, supra. Factually this case is almost indistinguishable from *Manning v. Yokas*. A minor was served intoxicants in violation of the Pennsylvania alcoholic beverage laws, and while intoxicated drove his automobile negligently, causing an accident. In the *Manning* case, it is true, the time between the minor's departure from the hotel until the accident, was only the short time it took to go nine blocks; while in the instant case (considering the evidence in the light most favorable to the plaintiff, which we must do upon motion for judgment n.o.v.) the accident took place about an hour and a half after the minor had his last drink at the restaurant. This time difference does not make the cases distinguishable. It is common knowledge that one often has much less control over his faculties in the hours following alcoholic imbibing than at the time the drinks are actually consumed. It takes some time before the alcohol "hits". It certainly cannot be said as a matter of law that as to an accident which is found to have been caused by the intoxication of a driver, a jury could not find that the intoxication resulted from drinks taken one or two hours before the collision.

In oral argument to this Court and in his brief, appellee has tried to take this case out of the *Manning*

*v. Yokas* ruling, arguing that in that case we did not consider whether the serving of the minor had been a *wilful* violation in terms of Section 1 of the Act of May 8, 1854, supra, which reads: "That wilfully furnishing intoxicating drinks by sale, gift or otherwise to any person of known intemperate habits, to a minor, or to an insane person for use as a beverage shall be held and deemed a misdemeanor, and upon conviction thereof the offender shall be fined not less than ten nor more than fifty dollars, and undergo an imprisonment of not less than ten nor more than sixty days, and the wilful furnishing of intoxicating drinks as a beverage to any person when drunk or intoxicated shall be deemed a misdemeanor, punishable as aforesaid." This contention is based on the view that the violation which is a prerequisite to civil liability under Section 3 of the Act of 1854, must necessarily be a violation of the aforestated Section 1. This is not the case, as a reading of the Act will make obvious. Section 3 clearly states: "That any person furnishing intoxicating drinks to any other person in violation *of any existing law,* or of the provisions of this acts [sic], shall be held civilly responsible . . ."

At the time the violation in the instant case took place, the Act of November 29, 1933, P. L. 15, (Special Session, 1933-34), as amended, was still in effect.[3] Section 602(e) as amended by Section 602(5) of the Act of June 16, 1937, P. L. 1762, stated: "[(e)] (5) It shall be unlawful for any licensee, or the board, or any employe, servant or agent of such licensee or of the board, to sell, furnish, or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished, or given, to

---

[3] It has since been repealed by the Act of April 12, 1951, P. L. 90.

any person visibly intoxicated, or to any insane person, or to any minor, or to habitual drunkards or persons of known intemperate habits."

This very section of the Act of 1933, as amended, was construed in *Commonwealth v. Borek,* 161 Pa. Superior Ct. 200, 54 A. 2d 101 (allocatur refused). The defendant argued that a licensee charged with selling intoxicating liquor to a minor may defend on the ground that it was not furnished to the minor either knowingly or negligently.[4] The Superior Court rejected the contention, stating, at p. 202: ". . . This is a rather ingenious argument; but that the legislature intended the mere fact of selling intoxicating liquor or beverage to a minor to constitute an offense irrespective of intention or good faith, is in our opinion clearly apparent upon a review of its subsequent legislation on the subject."[5]

The phrase "of any existing law" in the context of the Act of 1854 in our opinion refers to any law existing at the time this section of the Act is invoked, and not to laws existing in 1854, at the time of the enactment. Section 3 obviously intended to permit a civil recovery to persons injured as a result of the unlawful furnishing of intoxicating drinks, in addition to whatever criminal penalties might be imposed therefor. The terms of the Act contemplate that statutory changes would be made from time to time. The last clause of Section 3 provides that recovery may be had by action on the case, "instituted in any court having jurisdiction of such form of action in this Commonwealth." There

---

[4] This defense was available under the Act of May 25, 1897, P. L. 93, which, it was asserted, was still in effect despite the intervening National Prohibition Act and our Act of 1933.

[5] A similar rule was in effect in this Commonwealth prior to the Act of 1897, under the Act of May 13, 1887, P. L. 108. See *In Re License to C. M. Carlson,* 127 Pa. 330.

is no doubt that the Legislature was fully cognizant of which courts had jurisdiction in actions on the case in 1854, but, understanding that the jurisdiction of the Commonwealth's courts is changed from time to time, the Legislature in these terms showed its intention to make this remedy available to future litigants regardless of jurisdictional changes. And Section 6 of the Act of 1854, wherein provision is made for a payment not exceeding twenty dollars to persons prosecuting offenses under the Act, states: ". . . such allowance to be exclusive of compensation to such prosecutor as a witness *under existing laws. . .*" (Emphasis supplied). Here obviously, the section means to award a special allowance in the nature of a reward to encourage prosecutions, and intends that allowance to be in addition to whatever compensation the prosecutor would be allowed as a witness under the laws governing the appearance of witnesses *at the time the section is invoked,* and not at the time of enactment.

In *Free's Appeal,* 301 Pa. 82, 151 A. 583, this Court was called upon to determine whether the term "under existing laws" as used in the Act of April 3, 1867, P. L. 719, which provided that ". . . all fines and penalties imposed by, and all forfeited recognizances in, the several courts of York County, which, *under existing laws,* are not payable to the commonwealth, for its use, are hereby directed to be paid into the treasury of said county . . .", meant "laws existing at the time of the passage of the act or whether it includes laws subsequently passed and in existence at the time the fines and penalties are imposed." The specific question was whether the 1867 Act required that fines for the offense of driving while intoxicated, punishable under the 1913 Automobile Code, as amended, be paid to the county since the Automobile Code was not a *law in existence* in 1867, or whether the fines should go to the

Commonwealth by virtue of the laws in existence at the time of imposition of the fines. In deciding that "existing laws" included laws subsequently passed and in existence at the time the fines and penalties are imposed, this Court said, at p. 85: "The general rule of construction, where reference is made to existing laws, was discussed in Guenthoer's Est., 235 Pa. 67, and this court there so thoroughly discussed the question that we deem it unnecessary to do more than quote what was there said (page 73): 'If a statute specifically adopts a former statute or particular provisions of a former statue [sic] by reference to its title or otherwise, such statute or particular provisions thereof become a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act, but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared or clearly implied. While this general rule of statutory construction is well settled and recognized by judicial decisions as well as by text writers, yet it is equally well established as a rule of statutory construction that where the reference in an adopting statute is to the law generally which governs the particular subject, and not to any specific act or part thereof designated in the adopting act, the reference means the law at the time the exigency arises as to which the law is to be applied. We have frequently recognized this distinction and applied the rule that where the reference in an adopting statute is to the law generally upon any subject, the adopting statute means the law in force on the subject at the time it is invoked: In re Vernon Park, 163 Pa. 70; Kugler's App., 55 Pa. 123. . . ."

It seems clear to us, therefore, that Section 3 of the Act of 1854 applies to violations of the intoxicating beverage laws as they existed at the time of the offense,

and that Section 602(5) of the Act of 1933 as amended does not require a showing of "wilfulness" in order to make out a violation of "existing law". Reliance upon the first section of the Act of 1854 is unnecessary to hold Besnecker civilly liable in the instant case.

This case is governed by our recent decision in *Manning v. Yokas,* and accordingly we hold that the reasons given for the entry of judgment n.o.v. by the learned court below, and the arguments advanced before us by appellee, do not justify that judgment.

The jury made a special finding that the defendant Foster was intoxicated at the time of the accident. This finding is amply supported by the testimony of the mother and father of the victim who stated that they had ample opportunity to observe Foster when they came in contact with him in the doctor's office after the accident, and that he smelled of alcohol, his eyes were glazed and his speech was slurred; and by the physical facts of the accident itself which occurred on a clear, dry night on a straight level stretch of highway with no other automobiles in sight, and apparently no pedestrians about save the victim and his feminine companion walking along the berm on the far side of the highway. Foster's account of the accident was that he was driving along the highway at about twenty-five or thirty miles per hour straddling the white line, and that the first thing he knew about the accident was when he saw the victim on the hood and fender of his car. Certainly this evidence, coupled with the evidence that Foster had been drinking (though the extent is in dispute) on the evening in question, was sufficient to support the special finding.

The Pennsylvania State Policeman who investigated the accident was the only clearly disinterested witness to give testimony as to Foster's drinking that evening. All of the other witnesses who testified to that

were related to Foster, were in his company that evening and apparently friendly to him, or were related to Besnecker. It was not at all unreasonable, therefore, for the jury to accept the State Policeman's testimony that Foster admitted to him having beer at Besnecker's Restaurant at about eleven o'clock, and that Leonard Besnecker, son of the defendant, Paul J. Besnecker, admitted to him that he had served Foster two or three beers (it appears that when a "beer" is referred to, a bottle is meant) at 10:30 or 11:00 o'clock.

No evidence appears that Foster had had anything to drink elsewhere that evening. Indeed even if it appeared that he had been drinking elsewhere, that alone would not relieve Besnecker of liability, *Elkin v. Buschner,* 1 Mona. 359, 363; *Taylor v. Wright,* 126 Pa. 617, 17 A. 677. A careful perusal of the record convinces us that the jury had sufficient evidence before it to find against the defendant Besnecker, and we have held in numerous cases that the questions here presented were for the jury: *Manning v. Yokas,* supra; *Lang v. Casey,* 326 Pa. 193, 194, 191 A. 586; *Elkin v. Buschner,* supra, at p. 365. Accordingly, the judgment n.o.v. entered by the court below must be reversed.

Ordinarily upon a reversal of a judgment n.o.v. we would send the record back to the lower court for further disposition if there were a pending motion for a new trial. In the instant case the trial court refused a motion for a new trial as to the appellee Besnecker ". . . for the reason that the motion for judgment notwithstanding the verdict in behalf of Paul J. Besnecker has been sustained. . . ." Because it would appear that the motion for a new trial was not considered on its merits by the court below, we have felt constrained to review carefully the record as it would pertain to this motion.

The motion for new trial filed by Besnecker contained the customary "contrary to the evidence", "against the weight of the evidence", and "contrary to law" recitations, but no specific errors were alleged. The charge of the trial court was more than favorable to the defendant Besnecker. Indeed, his attorney took no special exception to it, except to request that a special jury finding as to intoxication be made, which request was immediately granted by the trial court. We have found no trial error, the jury had sufficient facts before it to reach its verdict, and no further grounds for a new trial appear on the record. Under these circumstances, it would serve no useful purpose to return this record to the court below for reconsideration of appellee's motion for a new trial.

The judgment n.o.v. is reversed, and judgment is here entered on the verdict of the jury in favor of the plaintiff and against the defendant Besnecker.

DISSENTING OPINION BY MR. JUSTICE BELL:

Assuming, arguendo, that the majority opinion's interpretation of the words "wilfully furnishing" is correct, I would affirm the judgment of n.o.v. in favor of Besnecker. There was no evidence whatever that Foster was intoxicated at the restaurant, or that his intoxication 1½ hours after he left the restaurant and at a place 6 miles away from the restaurant, was due to the one or two drinks of beer he purchased at the restaurant. *Manning v. Yokas*, 389 Pa. 136, 132 A. 2d 198, is clearly distinguishable. In that case the bartender served "intoxicating beverages" to a 16 year old boy who was *drunk* when he left the Inn and crashed head-on into a car on the opposite side of the road after he had driven only 8 or 9 blocks.