## Ranochia v. Reliance Insurance Company of Philadelphia

*Edward R. Reilly* and *Carl Carey*, for plaintiff.
*James W. Scanlon* and *James M. Howley*, for defendant.

ROBINSON, J., November 16, 1962.—This is an action in assumpsit brought by plaintiff, Lucy Ranochia, to recover on an "Owner's, Landlord's and Tenant's Liability Policy" issued by defendant, Reliance Insurance Company. The policy insured liability incident to the ownership and operation of a grocery store and restaurant in the City of Scranton at which alcoholic beverages were sold by plaintiff. Plaintiff alleged that she was required to settle death and personal injury suits brought against her growing out of the sale of alcoholic beverages to a minor when defendant disclaimed responsibility under the policy. Defendant denies coverage under the exclusion clauses of the policy and avers that written notice of the claim as required by the policy was not given to it by the insured.

By agreement of the parties, the case was heard by the court sitting without a jury. Facts on the issue of coverage were stipulated; testimony was taken on the issue of notice.

From the pleadings, stipulation and evidence the court finds the following facts:

On November 16, 1958, Lucy Ranochia and her daughter owned and operated a restaurant at 2239 Prospect Avenue, Scranton, Pennsylvania, at which she sold, under proper license, intoxicating beverages to the general public. There was then in effect a policy of insurance issued to plaintiff by defendant, Reliance Insurance Company of Philadelphia, under date of February 1, 1956, for a period of three years, designated as an "Owner's, Landlord's and Tenant's Policy" No. R.G.L. 13 40 28. The said policy underwrote plaintiff's liability for bodily injury and death growing out of the ownership of and operations on the premises.

Among a number of exclusions in the instrument exclusion (h) provided, inter alia, that the coverage did not apply "to liability imposed upon the insured or any indemnitee, as a person or organization engaged in the

business of manufacturing, selling or distributing alcoholic beverages, or as an owner or lessor of premises used for such purposes, by reason of any statute or ordinance pertaining to the sale, gift, distribution or use of any alcoholic beverage and, under coverage C, to any expense resulting from such sale, gift, distribution or use." The policy also required that written notice of an accident be given by or on behalf of the insured as soon as practicable after the occurrence of the same. The controversy concerns these provisions.

On the evening of November 16, 1958, Lucy Ranochia sold two cases of beer, an intoxicating beverage, to Patrick J. O'Malley, a minor, at the insured premises. O'Malley later was involved in an accident, while operating his motor vehicle, which resulted in the death of Richard Cigna, and injuries to June Simrell and Robert Albert. These minors were passengers in O'Malley's automobile.

Plaintiff bought the policy from the insurance brokerage firm known as the C. C. Young Agency which issued and countersigned the policy on behalf of defendant. George Young is a part owner of said insurance firm and on November 25, 1958, was a duly authorized agent of defendant company authorized to write policies of insurance and act as general agent for defendant. Young's authority was registered with the Insurance Commissioner of the Commonwealth of Pennsylvania. On November 25, 1958, plaintiff reported to said George Young, at her place of business, that she had sold beer to O'Malley who became involved in the accident which resulted in the death and injuries to passengers in his car. After exhibiting the policy plaintiff asked Young if it covered the risk and Young replied that there was nothing in the policy which would cover that type of claim.

On January 12, 1959, the United States Fidelity and Guaranty Company notified plaintiff in writing that

it expected contribution to the settlement of claims as O'Malley's insurance carrier. A copy of this notice was sent to the defendant. On April 6, 1959, and again on September 23, 1959, defendant notified plaintiff that it disclaimed responsibility by virtue of exclusion (h) in the policy.

The estate of Richard Cigna, June Simrell and Robert Albert made claims upon plaintiff because of the accident. On September 10, 1959, the Estate of Richard Cigna filed suit against Patrick O'Malley, plaintiff and her daughter for damages arising from Cigna's death and alleged in paragraph 7 that: "Due to the negligence and illegal acts of defendants, Lucy Ranochia and Margaret Ranochia, defendant, Patrick O'Malley, was furnished by them with two cases of 12 ounce bottles of beer a few hours before the accident, as aforesaid, said defendants, Lucy Ranochia and Margaret Ranochia, knowing and being aware that the said Patrick J. O'Malley was a minor and that he was driving an automobile, with other minors as passengers and that, nevertheless, they negligently and willfully furnished the beer, as aforesaid, on Sunday evening, November 16, 1958."

The suit papers in the action were promptly forwarded to defendant which denied coverage under the policy and declined to defend solely because of exclusion (h). Defendant did not raise plaintiff's failure to give written notice until answer was filed.

Plaintiff retained counsel to defend against the claims. Plaintiff settled with the Estate of Cigna for $3,000 on the death claim and paid $1,200 on the personal injury claims of June Simrell and Robert Albert. She also paid $1,000 for counsel fees, expenses and costs in the litigation. This action was then instituted against defendant on the policy for $5,200.

*Discussion*

Two questions are presented by this controversy: (a) whether plaintiff is precluded from recovery, even though her claim has merit, because written notice of the accident was not given to the company or one of its authorized agents as soon as practicable and, (b) whether the coverage of the policy did not apply because of the provisions of exclusion (h) in respect to liability imposed by reason of a violation of a statute relating to the sale, gift, distribution or use of any alcoholic beverage.

(a) We do not think that the circumstances here warrant dismissal of plaintiff's claim because written notice of the accident was not given to the company or one of its authorized agents as soon as practicable. The facts are undisputed that the policy was issued by the insurance firm of C. C. Young Insurance Agency; that it bore the handmark of said agency; and that the policy itself was countersigned by said C. C. Young Agency. As this policy was in effect some two years and eight and one-half months before the events giving rise to the claims during which premiums were paid by plaintiff and presumably accepted by the company there can be little question that the C. C. Young Agency were authorized agents as referred to in the policy. When it is further considered that George Young, an owner of the said agency, was registered and licensed as an agent of the defendant by the Insurance Commissioner of the Commonwealth of Pennsylvania it is clear that he was defendant's authorized general agent and his acts and dealings with plaintiff in respect to the policy and its coverages were binding on defendant.

The fact, then, that plaintiff consulted with an authorized agent, presented her policy to him, told him in a general way of the death and personal injury claims she anticipated would be brought against her and was informed by the agent that there was no cover-

age under the terms of the policy became important in respect to the failure to give the written notice required by the policy. Conduct of an agent in respect to a claim which tends to mislead the insured excuses a failure to comply with the policy in matters of notice, proof of loss and similar requirements. They may be waived by an agent whose acts though irregular are binding upon the company. Strict performance of conditions precedent such as notice are excused where extenuating circumstances tending to explain or excuse the insured's failure exist. See Gough v. Halperin, 306 Pa. 230.

It must be noted that defendant and its agents did not question the failure to give written notice before the institution of suit; they rejected the claim for lack of policy coverage. When plaintiff reported the potential liability to defendant agent it became the company's obligation to notify the insured that written notice was required before it could act. If it could resist liability because of lack of coverage as it did it could have also done so on the basis of lack of notice. Such circumstances establish a waiver or estoppel to assert same afterwards: Astrin v. Metropolitan Life Insurance Co., 341 Pa. 120. An insurer can not object to the failure to give written notice when such is due to a misleading representation by the insurer's agent that the policy does not cover the loss: Bachman v. Monte, 326 Pa. 289. These considerations are based upon accepted principles of contracts law that a promisor who is chargeable himself with nonperformance of a condition affecting his own liability can not take advantage of the failure. See Nanty-Glo Borough v. American Surety Company, 316 Pa. 408.

It must be noted that defendant received from plaintiff copy of a letter from O'Malley's insurance carrier in respect to the death and injury claims and that the correspondence was received within 60 days of the ac-

cident. Thus there was ample opportunity to investigate the claim and defendant did investigate same and disclaimed because of the lack of coverage. We are not prepared to say under these circumstances that written notice was not given as soon as practicable. Plaintiff was not involved in the accident and had no way of knowing what responsibility might attach to her until such claim was made. When claim was made it was promptly reported. We hold that plaintiff is not precluded from recovery on the basis of failure to give written notice of the accident: Hachmeister, Inc. v. Employers Mutual Liability Insurance Company of Wisconsin, 403 Pa. 430, and Nelson v. Travelers Insurance Co., 113 Vt. 86, 30 A. 2d 75, are cases in which there was an utter lack of special or extenuating circumstances, to excuse the requirement of notice. Such is not the case here.

(b) The liability of one who sells, gives or otherwise furnishes intoxicants to minors, inebriates or similar persons which results in their death or injury or to third persons because of the acts of such minors or inebriates has been fully treated upon in the following cases and annotations: Rappaport v. Nichols, 31 N. J. 188, 156 A. 2d 1; Galvin v. Jennings, 289 F. 2d 15; Waynick v. Chicago's Last Department Store, 269 F. 2d 322; Fleckner v. Dionne, 94 Cal. App. 2d 246, 210 P. 2d 530; State v. Hatfield, 78 A. 2d 754 (Md.). See also the following exhaustive annotations: Liability of Seller of Intoxicating Liquor, 130 A. L. R. 341; Liability of Seller of Liquor, 54 A. L. R. 2d 1152; Common-law action for injury in consequence of sale of liquor, 75 A. L. R. 2d 821. The liability has been considered in the following recent cases in Pennsylvania: McKinney v. Foster, 391 Pa. 221; Manning v. Yokas, 389 Pa. 136; Schelin v. Goldberg, 188 Pa. Superior Ct. 341.

It is settled that ordinarily a vendor of intoxicating liquor is not answerable at common law to the buyer

538

or a third person for injury or damages sustained by the latter as a result of the intoxication of the purchaser. See 75 A.L.R. 2d 835, Intoxicating Liquor, A. Sale, and cases therein collected; 30 Am. Jur. §520. Two reasons were generally assigned in support of the common law ruling (1) That the common law presumed a human being to be responsible for his acts, (2) the drinking rather than the sale of the liquor was the proximate cause of the injury or damage.

Powerful dissents have been written to the judicial rejection of the common-law claims (see Dooling, J., dissenting in Fleckner v. Dionne, supra, 210 P. 2d 530), and were this a matter of first impression we would consider that the tavern keeper has a common-law duty to limit sales of intoxicating liquors to individuals of reasonable social responsibility. However, the legislatures have long since acted to protect the interests of society and its members from invasions arising from the sale, gift or other furnishing of intoxicating liquors. Regulating statutes generally may be classified in four groups, viz. (1.) Statutes which define the standard of conduct; (2.) those which enlarge the protection of the common law; (3.) enactments which give new form of protection to interests previously partially protected; and (4.) laws protecting interests which the common law had previously refused to protect. See, Restatement, Torts §286, comment.

For over a century and more the legislatures have acted in one form or other to regulate the sale or other distribution of intoxicating liquors to the general public and to protect the members thereof from tortious invasions of their interests. Familiar examples of this legislation are the so-called Civil Damage or Dramshop Acts and other statutes which make prohibited acts criminal offenses. The liability of a dispenser under the dramshop and civil liability acts is annotated in 64 A. L. R. 2d 705, and 65 A. L. R. 2d 923.

In Pennsylvania, section 1 of the Act of May 8, 1854, P. L. 663, made the wilful furnishing of intoxicating drinks to an inebriate, minor or insane person a misdemeanor. Section 3 provided "that any person furnishing intoxicating drinks to any other person in violation of any existing law, or of the provisions of this act shall be held civilly responsible for any injury to person or property in consequence of such furnishing, and any one aggrieved may recover full damages against such person so furnishing by action on the case."

In McKinney v. Foster, 391 Pa. 221, and Manning v. Yokas, 389 Pa. 136, the Supreme Court held that section 3 of the Act of May 8, 1854, P. L. 663, applied to make liable any person who furnished intoxicating liquor to a minor who became intoxicated thereby, to anyone injured by the acts of said minor. This liability was imposed because the supplier of the intoxicant had violated the standard of behavior set up by the statute.

The Act of 1854 was specifically repealed by the Liquor Code, Act of April 12, 1951, P. L. 90, 179. Section 493 (subsection 1) of the Liquor Code, 47 PS §4-493, however, enacted that the furnishing of intoxicants by sale or gift or otherwise to any minor, intoxicated or insane person constituted an unlawful act. Schelin v. Goldberg, 188 Pa. Superior Ct. 341, came up after the repeal of the Act of 1854, but it was held nevertheles that the supplier of liquor to a visibly intoxicated person was liable if the injuries sustained were causally connected with the furnishing of the liquor. The liability was based upon the principle of common law negligence that the doing of an act prohibited by a statute makes the actor liable for the invasion of an interest protected by the statute: Restatement, Torts §286. The Superior Court held, under section 483 of the Restatement, that the defense of contributory negligence was not available where the stat-

ute protected the injured person because of his inability to exercise self protective care. The Superior Court also said at page 349: "In Fink v. Garman, supra, 40 Pa. 95, 105 (1861), Mr. Justice Woodward said, 'It would probably be found, if it were worth-while to go into an examination of all prior legislation, that it never was lawful, but always unlawful negligence in Pennsylvania to furnish liquors to men actually drunk at the time, or known to be habitually intemperate.' " The court said that section 3 of the Act of 1854 was not the real basis of the liability.

It seems abundantly clear that the liability in Pennsylvania in such cases is necessarily dependent upon the violation of a statute. The violation of a statute may be negligence where one protected by the statute suffers harm which the statute attempted to prevent. See Prosser, Law of Torts, §34. The basic theory of the liability is that the criminal statute has imposed a duty on the actor which must be discharged with ordinary care and prudence or a standard of behavior fixed by legislature. See Morris, Criminal Statutes and Tort Liability, 46 Harvard Law Review 453. We know of no instance in Pennsylvania where liability has been imposed upon the supplier of liquor for injury or death growing out of a sale, gift or furnishing of intoxicants that has not involved the violation of a statute.

The violation of a statute is generally negligence per se, while the violation of a municipal ordinance is evidence of negligence: Jinks v. Currie, 324 Pa. 532. The violation of a penal statute is negligence per se: Johnson v. Endura Manufacturing Company, 282 Pa. 322. The violation of a mandatory provision of a statute is negligence and actionable without more if it is the proximate cause of injury: Wermeling v. Shattuck, 366 Pa. 23; Steele v. Peoples Natural Gas Company, 386 Pa. 439, 446. We must dismiss defendant's contentions in respect to the illegal sale of beer on Sunday.

This was not the proximate cause of the claims made against plaintiff.

Plaintiff argues that the principle stated in Restatement, Torts §308, and applied in Kuhns v. Brugger 390 Pa. 331, imposes liability upon a supplier of liquor to inebriates and similar patrons irrespective of the prohibitions of the legislature. This principle holds an actor negligent who permits another to use a thing under the actor's control if he knows or should know such person intends or is likely to use the same in such manner as to create an unreasonable risk of harm to others. The refutation to this contention is twofold: first, where intoxicants are furnished by an actor to a class of individuals likely to misuse them the legislature has acted to prohibit the same for the protection of those likely to be harmed; and second, that in the action for Robert Cigna's death it was expressly alleged in the negligence counts that the act of plaintiff was illegal, and there is no allegation that the supplier knew or ought to have known of the potential danger in the sale. We are not concerned whether a case could have been pleaded against plaintiff without reference to a violation of law; it is sufficient that a disregard of the statute was basic to the claims asserted against her.

An insurance carrier is bound to defend or pay a claim against its insured if it is one included within the risk coverage undertaken by the insurer. And this is true regardless of the truth or falsity of the claim: Wilson v. Maryland Casualty Company, 377 Pa. 588. The insurer may refuse to defend or pay a claim potentially within the policy coverage only at its peril: Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582. See also Lee v. Aetna Casualty and Surety Company, 178 F. 2d 750. The nature of the claim determines the insurer's duty to defend or pay: Wilson v. Maryland Casualty Company, 377 Pa. 588. And where an insurer wrongfully denies coverage the in-

sured may make reasonable settlement of the claim and recover from the insurer: Murphy & Company v. Manufacturers' Casualty Company, 89 Pa. Superior Ct. 281. Of course, the insurer has no duties to the insured in respect to claims that are outside of the risk coverage undertaken.

We must note a difference in the claims of the Cigna Estate and those of June Simrell and Robert Albert although the parties have treated them as identical. The Simrell and Albert claims were settled by plaintiff without suit or notice thereof to the insurer which had no opportunity to pay or defend the same. Assuming the liability of the defendant under the policy it is doubtful that plaintiff would be entitled in the circumstances to reimbursement for the payment of the Simrell and Albert claims.

We are of the opinion that the claim against plaintiff is taken out of the coverage of this policy by the provisions of exclusion (h). The language of this exclusion clause is clear and unambiguous and interpretation thereof is not required or indeed permitted. The intent is clear that the policy coverage does not apply where liability is imposed on an insured as a person engaged in the business of selling or distributing intoxicants by reason of any statute pertaining to the sale, gift, distribution or use of an alcoholic beverage. We hold that this language is broad enough to include not only instances where a statute imposes direct civil liability for a prohibited act but also to those cases where negligence is predicated upon the violation of a criminal statute. When the policy excluded from the coverage liability imposed by reason of any statute pertaining to the sale, gift, distribution or use of alcoholic beverages it declared that the coverage undertaken did not contemplate liability originating because of an unlawful act. The policy was designed to underwrite only the risk incident to a lawful enterprise.

*Conclusions of Law*

Accordingly, the following conclusions of law are entered:

1. Plaintiff is not precluded under the facts and circumstances here from recourse on the policy because formal written notice of the accident was not given to defendant insurance company.

2. Plaintiff's liability was imposed on her, as an insured engaged in the business of selling intoxicants, by reason of the violation of a statute pertaining to the sale, gift, distribution or use of alcoholic beverages and therefore excluded from the policy coverage by exclusion (h) thereof.

3. Defendant insurance company is not liable under the policy.

*Decision*

Now, November 16, 1962, decision in the above action in assumpsit is rendered in favor of defendant and the complaint is dismissed. The prothonotary is directed to give notice to the parties or counsel of the filing hereof. Final judgment shall be entered in favor of defendant unless exceptions are filed hereto within 30 days.